Martin T. KOSMYNKA and Christine Kosmynka, Plaintiffs–Appellees,

v.

POLARIS INDUSTRIES, INC., Defendant–Appellant.

Docket No. 05–3958–CV.

United States Court of Appeals, Second Circuit.

Argued: March 14, 2006.

Decided: Sept. 1, 2006.

---

Wayne D. Struble, Bowman and Brooke LLP, Minneapolis, Minnesota (David S. Miller, on the brief; Annette G. Hasapidis, of counsel), for Defendant–Appellant.

Brian J. Isaac, Pollack, Pollack, Isaac & De Cicco, New York, New York (Roura & Melamed, on the brief), for Plaintiffs–Appellees.

Before: JACOBS and WESLEY, Circuit Judges, and KOELTL, District Judge.*

DENNIS JACOBS, Circuit Judge.

Martin Kosmynka was loading an all-terrain vehicle ("ATV") onto a trailer when the vehicle climbed the far wall of the trailer, flipped over, and rendered Mr. Kosmynka paralyzed. Mr. Kosmynka and his wife sued the ATV manufacturer, defendant Polaris Industries, Inc. ("Polaris"), on theories of strict products liability, negligence, and breach of implied warranty. Polaris now appeals from a judgment entered after a jury trial in the United States District Court for the Eastern District of

New York (Wexler, *J.*), awarding Mr. Kosmynka and his wife (Christine Kosmynka) $2.2 million in damages. The jury found in favor of Polaris on the strict products liability and breach of warranty claims, but found that Polaris negligently designed the vehicle or failed to provide adequate safety warnings.

Polaris appeals on the grounds that [i] it was entitled to judgment as a matter of law, and [ii] the verdict was inconsistent because a product defect is (as the jury was properly charged) an element of the claims for negligent design and negligent failure to warn. We reject the argument that Polaris is entitled to judgment as a matter of law. But we conclude that the jury verdict was inconsistent, and that Polaris preserved its objection to the inconsistency. Accordingly, we vacate the judgment of the district court and remand the case for retrial.[2]

**BACKGROUND**

■ When an appeal comes to us after a jury verdict, we view the facts of the case in the light most favorable to the prevailing party. *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 253 (2d Cir.1991).

**A**

In the summer of 1999, Mr. Kosmynka purchased a new 2000 all-wheel drive Polaris Sportsman 500 ATV ("Sportsman") from his local Polaris dealer, towing it home on a two-wheel "tilt bed trailer" (essentially a seesaw on wheels), which he had previously bought for general yard and garden work. The trailer was not purchased with factory-optional walls or

* The Honorable John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

2. Judge Jacobs would have preferred to require a retrial on liability only, subject to the trial court's decisions on whether to widen the scope of the retrial.

side boards; so Mr. Kosmynka retrofitted it himself.

On October 6, 1999, Mr. Kosmynka's neighbor, who had the identical vehicle, borrowed the trailer in order to take his Sportsman to the Polaris dealership for servicing. After the neighbor unsuccessfully tried to get the vehicle onto the trailer, Mr. Kosmynka took over. After engaging the all-wheel drive switch and selecting the "low-low" gear for additional traction, Mr. Kosmynka applied the thumb throttle and attempted to ease the vehicle up the trailer bed. Seconds later, the vehicle's front wheels "start[ed] climbing the front of the boards" of the trailer; the Sportsman then tipped over backwards and landed on top of Mr. Kosmynka, rendering him paralyzed.

The Polaris owner's manual contained no instruction about how to load or unload the vehicle onto any trailer; then again, Mr. Kosmynka did not recall reading any sections whatever of that manual.

The Kosymnkas' lawsuit proceeded to a jury trial.

## B

After the presentation of evidence, the district judge instructed the jury on negligence, strict products liability, and breach of implied warranty. The court's charge paralleled the New York Pattern Jury Instructions, as did the verdict sheet, which contained interrogatories on each theory of liability, on contributory negligence, on the fault chargeable to each party, and on damages.

The jury found that [i] Polaris was "negligent in the design of the ATV or in the failure to adequately warn of dangers in using the ATV"; [ii] the ATV was not defectively designed and Polaris adequately warned of the dangers of operating the ATV; and [iii] Polaris did not breach its implied warranty to Plaintiff.[3] After apportionment of 30 percent of the fault to Polaris (and 70 percent to Mr. Kosmynka), the award in favor of plaintiffs totaled $2.2 million.

Immediately after the verdict was read, counsel for Polaris requested a sidebar and advised the judge (with the jury still empaneled) that the negligence and strict liability findings were inconsistent. As counsel explained, the jury had misapplied the court's negligence charge by finding Polaris negligent even though the product was found not defective:

> [It was] [i]nconsistent that [the jury] would find negligence but no defect because an element of the negligence claim is that the product had to be defective plus an additional element, that the defect existed by reason of the defendant not using the reasonable care. That's the difference between strict liability

3. In relevant part, the jury's verdict sheet reads as follows:

*Claim 1—Negligence*
1. Was Defendant negligent in the design of the ATV or in the failure to adequately warn in using the ATV?
[Yes.]

\* \* \* \* \* \*

2. Was Defendant's negligence a proximate cause of Martin Kosmynka's injury?
[Yes.]

\* \* \* \* \* \*

*Claim 2—Products Liability*

3. Was the ATV defective in that it was defectively designed or in that defendant failed to adequately warn of dangers in using the ATV?
[No.]
4. Was the defect the proximate cause of Martin Kosmynka's injuries?
[No.]

\* \* \* \* \* \*

*Claim 3—Breach of Warranty*
5. Did Polaris breach its warranty to Plaintiff?
[No.]

and negligence, they wouldn't have had to show, to find strict liability, that the[y] didn't use reasonable care.

So it was possible to find defect and negligence, but you can't find negligence but no defect. There still would have had to have been a defective product for them to find negligence.

Counsel for both sides explained to the court that the jury could be re-instructed, because the jury was still empaneled. The court concluded, however, that re-instruction was impracticable: "[The jury] already ha[s] the charge in front of them." The court also declined to declare a mistrial. Consequently, the court allowed the verdict to stand, entered judgment, and denied Polaris' subsequent motions for judgment as a matter of law and for a new trial.

### DISCUSSION

### I

Polaris argues that it is entitled to judgment as a matter of law because [i] it neither owed nor breached a duty to protect Mr. Kosmynka from a risk that was not reasonably foreseeable and [ii] plaintiffs failed to prove that Polaris' negligence was the proximate cause of Mr. Kosmynka's injury.

■ Under Rule 50(a)(1), Fed.R.Civ.P., judgment as a matter of law is proper only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." A jury verdict should be set aside only where there is " 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive

at a verdict against him.' " *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992) (ellipsis in original) (quoting *Mattivi v. S. African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980)).

### A

■ Under New York law, which applies in this diversity action, *see Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), a negligent tortfeasor is liable for any reasonably foreseeable risk that is proximately caused by its action. *See Di Ponzio v. Riordan*, 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377, 679 N.E.2d 616 (1997); *see also Codling v. Paglia*, 32 N.Y.2d 330, 340–41, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973) ("[A manufacturer] can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose."). "[A]lthough virtually every untoward consequence can theoretically be foreseen 'with the wisdom born of the event,' the law draws a line between remote possibilities and those that are reasonably foreseeable because '[n]o person can be expected to guard against harm from events which are ... so unlikely to occur that the risk ... would commonly be disregarded.' " *Di Ponzio*, 89 N.Y.2d at 583, 657 N.Y.S.2d 377, 679 N.E.2d 616 (citations omitted); *see also Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99 (1928) ("The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension."). "There must be knowledge of a danger, not merely possible, but probable." *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 389, 111 N.E. 1050 (1916).

■ Within limits, negligence is a question of fact best left to the jury. *See, e.g., Ugarriza v. Schmieder*, 46 N.Y.2d 471,

474, 414 N.Y.S.2d 304, 386 N.E.2d 1324 (1979) ("[T]he very question of negligence is itself a question for jury determination."); *Palsgraf,* 248 N.Y. at 345, 162 N.E. 99 ("The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury.").

 To prove negligent design, a plaintiff must demonstrate that the product defect was a "substantial factor in causing the injury," *see Fritz v. White Consol. Indus.,* 306 A.D.2d 896, 898, 762 N.Y.S.2d 711 (App.Div.2003) (internal quotation marks and citation omitted), and that "it was feasible to design the product in a safer manner," *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 108, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983); a defendant can rebut such a showing by presenting evidence that the product (as designed) "is a safe product—that is, one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost." *Id.* at 108–09, 463 N.Y.S.2d 398, 450 N.E.2d 204. Practical engineering feasibility can be demonstrated by expert testimony concerning either a prototype that the expert has prepared or similar equipment using an alternative design that has been put into use by other makers. *Rypkema v. Time Mfg. Co.,* 263 F.Supp.2d 687, 692 (S.D.N.Y.2003) (referencing New York law).

 "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known. A manufacturer also has a duty to warn of the danger of unintended uses of a product provided these uses are reasonably foreseeable." *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 237, 677 N.Y.S.2d 764, 700 N.E.2d 303 (1998) (collecting cases) (internal citations omitted).

**B**

Plaintiffs assert that the Sportsman was defective in two ways: [i] that it was defectively designed in such a way that it would climb steep vertical surfaces and flip-over backward on top of its operator, and [ii] that it failed to contain adequate safety warnings of the danger of such a foreseeable consequence. Plaintiffs also argue that each defect was a proximate cause of Mr. Kosmynka's injury. While we find the evidence insufficient as a matter of law to sustain a finding of defect on a theory of defective design, a colorable argument can be made that a rational juror could conclude that the product was defective because of a failure to warn of a foreseeable danger. At trial, the jury considered, *inter alia,* the following evidence:

● The expert testimony of William Medcalf (a design expert), who [i] proposed as a reasonable alternative design the use of a "tilt switch" (or "kill switch"), which would cut power to the Sportsman's wheels if the vehicle climbed too steep a slope or accelerated too rapidly; and [ii] conceded that [a] no reasonable alternative design could have prevented Mr. Kosmynka's accident without impairing the capabilities of the Sportsman; [b] no ATVs on the market feature tilt switches, likely because they "[are] not a practical, feasible design for the purposes for which [ATVs were] intended in off road riding"; [c] he had never installed or tested a tilt switch on any ATV; and [d] no tilt switch could have prevented Mr. Kosmynka's accident, because such a device cannot immediately halt the power running to the drive train or instantaneously stop forward momentum.

• The expert testimony of Kris Kubly (an expert in the fields of mechanical engineering and ATV riding, testing, and accident reconstruction), who stated that [i] ATVs are operated over a wide variety of terrain, including hills, rock-filled ravines, short rock ledges, logs, streams, trails, and similar obstacles; and [ii] the Sportsman could rise to an incline of approximately 45 degrees before "it starts to be on the verge of tipping over."

• The testimony of Mitchell Johnson (the director of a Polaris technology center), who stated that [i] the Sportsman was equipped with a few warnings as to the maximum, recommended incline on which the vehicle should be operated— i.e., 25 degrees; [ii] any ATV that approached a wall "with the throttle open" would climb the wall; and [iii] that a conventional, full-time four-wheel drive ATV (by a Japanese manufacturer) that encounters a wall or obstacle would climb that wall or obstacle, respectively.

• The expert testimony of Dr. Kenneth Laughery (a warnings expert), who stated that [i] it is "not an open and obvious hazard" that a demand all-wheel drive ATV is "capable of climbing a vertical wall or vertical object"; [ii] the vehicle's owner's manual failed to warn about the ATV's ability to "climb a vertical wall and roll" while in four-wheel drive; [iii] it would have taken no more than "a page or two" to provide an adequate safety warning; [iv] he knew of no ATV manufacturer whose manuals or labels contained any such warning; and [v] he was aware of no empirical study demonstrating that such warnings effectively modify ATV-riders' driving habits.

• The inability of Mr. Medcalf and Dr. Laughery to identify an accident in which an ATV tipped over while being loaded onto a trailer, and the fact that—

at the time of Mr. Kosmynka's accident—Polaris had sold 750,000 all-wheel drive ATVs and had received no complaints of flip-overs caused by an ATV's front wheels climbing the front wall of a trailer.

Based on the foregoing, we conclude that there was insufficient evidence to support a finding that Polaris was negligent in its design of the Sportsman; plaintiffs introduced no reasonable alternative design that would have made the Sportsman safer without materially impairing the vehicle's utility. Indeed, plaintiffs failed to demonstrate that the installation of a tilt switch (which was never tested by any of plaintiffs' experts on any ATV) would have been practical or would have prevented the accident. *See Voss*, 59 N.Y.2d at 108–09, 463 N.Y.S.2d 398, 450 N.E.2d 204.

It is a closer call as to the adequacy of the Sportman's safety warnings. A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known, and of the danger of unintended (but reasonably foreseeable) uses of its product. *See Liriano*, 92 N.Y.2d at 237, 677 N.Y.S.2d 764, 700 N.E.2d 303. On the one hand, Polaris knew that owner-operators of the Sportsman would use their vehicles to navigate obstacles, forge streams, climb and descend steep inclines, and the like; and that owner-operators would have to load and unload their ATVs onto and from various types of trailers. On the other hand, while Polaris knew of the potential of similar four-wheel drive ATVs climbing walls and flipping over, they also had had no reports of their demand four-wheel drive vehicles doing so.

The jury was instructed to consider both

negligence claims.[4] So, we cannot determine how or to what extent the jury's finding of negligence was based on the evidence of Polaris' failure to warn versus the evidence concerning design.[5] The jury may or may not have considered that Mr. Kosmynka's accident was of a potentially broader class of mishap in which a demand four-wheel drive ATV climbs any vertical surface touched by the exposed front wheels, such as a boulder, log, snowbank, garage wall, etc.

We therefore conclude that there was not " 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture.' " *Ives Labs.*, 957 F.2d at 1046 (citation omitted). Accordingly, we uphold the district court's denial of Polaris' motion for judgment as a matter of law.

## II

In the alternative, Polaris argues that it is entitled to a new trial because the jury rendered an inconsistent verdict, having found (on the one hand) that Polaris was negligent and (on the other) that there was no defect in the Sportsman's design or warning. We agree that the jury verdict was inconsistent and that a new trial is required.

### A

■■■■■ We review the grant or denial of a motion for a new trial for abuse of discretion. *Song v. Ives Labs., Inc.*, 957

F.2d 1041, 1047 (2d Cir.1992). Such a motion " 'ordinarily should not [be granted] unless [the trial court] is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988)). When a jury returns a verdict by means of answers to special interrogatories, the findings must be consistent with one another, as they form the basis for the ultimate resolution of the action. *Crockett v. Long Island R.R.*, 65 F.3d 274, 278 (2d Cir.1995). If "the jury's answers cannot be harmonized rationally, the judgment must be vacated and a new trial ordered." *Id.* (quoting *Brooks v. Brattleboro Memorial Hosp.*, 958 F.2d 525, 530–31 (2d Cir.1992)).

### B

■■■■ Plaintiffs point out that Polaris urged the district court to declare a mistrial, and thus failed to satisfy its duty as the "dissatisfied party" to "make sure that the jury [was] not discharged until [the jury] ha[d] had a chance to reconsider its verdict," and to seek affirmatively re-submission to the jury of any anomaly it could have corrected. Plaintiffs contend that this post-verdict conduct amounted to waiver of any argument that the verdict was inconsistent. We disagree.

Polaris brought the inconsistency to the court's attention at the earliest possible moment; Polaris sought and was granted

4. The jury was charged:
 The "defect" alleged by Plaintiffs here are defective design of the ATV or the failure to adequately warn of dangers in using the ATV or both.
 The verdict sheet asked:
 Was Defendant negligent in the design of the ATV or in the failure to adequately warning of the dangers in using the ATV?

5. Neither party argues that it preserved (or that the other waived) any objection to the jury instructions or verdict sheet with respect to the jury's separate consideration of the two aspects of plaintiffs' negligence claim. The only objection lodged by Polaris related to the improper merging of the product liability and breach of implied warranty claims.

a sidebar conference after the jury foreman announced the verdict and before the jury was polled. At that juncture, the court had the option of curing the inconsistency while the jury remained empaneled. Sometime later, after the jury was excused (though still in the jury room), and after the court acknowledged that it could not improve on the jury charge, the parties were asked what should be done; and plaintiffs advocated reinstruction while Polaris advocated a mistrial. The Court rejected both of these options and thought it best to leave the issue to the Court of Appeals:

> [POLARIS]: May I ask how the Court would instruct the jury as to this inconsistency? That's our threshold problem?
>
> THE COURT: I don't know.
>
> How do you recommend we send it back to the jury on the inconsistency?
>
> [POLARIS]: I do not believe, your Honor, that there is a way, practically, to instruct the jury how to resolve the inconsistency. I think under the circumstances the only choice is to declare a mistrial.
>
> \* \* \* \* \* \*
>
> THE COURT: In view of the clear directions to me given by the parties, one doesn't say anything and one wants a mistrial, I'm going to let it stand, and I'll excuse the jury, and that's the reason that we have the Second Circuit.

■ It is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury. *See, e.g., Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1331 (9th Cir.1995) (collecting cases) ("When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused."); *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1423 (10th Cir. 1986) (finding waiver when court inquired whether counsel had anything to raise before excusing jury and counsel replied negatively); *Tennessee Consol. Coal Co. v. UMW*, 416 F.2d 1192, 1200–01 (6th Cir. 1969) (same); *Kirkendoll v. Neustrom*, 379 F.2d 694, 699 (10th Cir.1967) (same). "The requirement of a timely exception is not merely a technicality. Its function 'is to give the court and the opposing party the opportunity to correct an error in the conduct of the trial.'" *Barry v. Manglass*, 55 N.Y.2d 803, 805–06, 447 N.Y.S.2d 423, 432 N.E.2d 125 (1981) (citing *Delaney v. Philhern Realty Holding Corp.*, 280 N.Y. 461, 467, 21 N.E.2d 507 (1939)).

But there is no authority to support plaintiffs' contentions that, when faced with an inconsistent verdict, the onus is on the "dissatisfied party" to *ensure* that the court keep the jury, or that by requesting a mistrial, a "dissatisfied party" waives appellate review of the inconsistent verdict. Once the court is on notice of the inconsistency, each party has the choice of what to advocate and the court has the choice of what to do.

■ When Polaris raised the issue, the court consulted the parties as to the best course of action, and could have decided to give some further instruction, to adjourn for a day to think about it (without dismissing the jury), to declare a mistrial, or to do something else. A litigant preserves the issue for appeal by exposing the inconsistency before the jury is dismissed, so that the court has available to it the option of re-submitting the questions to the jury

after some further instruction. *See Barry,* 55 N.Y.2d at 806, 447 N.Y.S.2d 423, 432 N.E.2d 125 ("If the inconsistency had been raised, the trial court could have taken corrective action before the jury was discharged, such as resubmitting the matter to the jury."). That done, a lawyer waives nothing by urging the court to adopt the course that best favors that lawyer's client. *Cf. Cundiff v. Washburn,* 393 F.2d 505, 507 (7th Cir.1968) ("Our interpretation of Rule 49(b), in the absence of objection by counsel, leaves to the trial court alone the discretion to choose the means of correcting inconsistency, subject to review by this court on appeal.").

Our sister circuits have reached similar conclusions, albeit in unpublished decisions. The Ninth Circuit declined to find waiver on similar facts in *Tritchler v. County of Lake,* No. 98–16062, 2000 WL 983312, at \*2, 2000 U.S.App. LEXIS 17463, at \*4 n. 2 (9th Cir. July 17, 2000) (table op.) ("We reject plaintiffs' argument on appeal that defendants waived their objections to the inconsistent verdicts by failing to insist that the verdicts be resubmitted, instead suggesting that the issue be resolved by way of post-trial motion."); [6] as did the Fourth Circuit, *see Essex v. Prince George's County, Maryland,* 17 Fed.Appx. 107, 118 n. 4 (4th Cir.2001) (unpublished per curiam) (rejecting a waiver argument because "both parties lodged timely objections prior to the discharge of the jury."); [7] *see also Los Angeles Nut House v. Holiday Hardware Corp.,* 825 F.2d 1351, 1354–55 (9th Cir.1987) (distinguishing *Cundiff, supra,* which held that counsel's failure to object to inconsistency when asked by court before jury was excused constituted waiver of objection).

## C

Waiver of an objection to an inconsistent verdict has been found in this Circuit when the inconsistency was caused by an im-

---

**6.** Ninth Circuit Local Rule 36–3 (Citation of Unpublished Dispositions or Orders) reads as follows:

(a) Not Precedent: Unpublished dispositions and orders of this Court are not binding precedent, except when relevant under the doctrine of law of the case, res judicata, and collateral estoppel.

(b) Citation: Unpublished dispositions and order of this Court may not be cited to or by the courts of this circuit, except in the following circumstances.

(i) They may be cited to this Court or to or by any other court in this circuit when relevant under the doctrine of law of the case, res judicata, or collateral estoppel.

(ii) They may be cited to this Court or by any other courts in this circuit for factual purposes, such as to show double jeopardy, sanctionable conduct, notice, entitlement to attorneys fees, or the existence of a related case.

(iii) They may be cited to this Court in a request to publish a disposition or order made pursuant to Circuit Rule 36–4, or in a petition for panel rehearing or rehearing en banc, in order to demonstrate the existence of a conflict among opinions, dispositions, or orders.

**7.** Fourth Circuit Local Rule 36(c) (Citation of Unpublished Dispositions) reads as follows:

In the absence of unusual circumstances, this Court will not cite an unpublished disposition in any of its published opinions or unpublished dispositions. Citation of this Court's unpublished dispositions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.

If counsel believes, nevertheless, that an unpublished disposition of this Court has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if counsel serves a copy thereof on all other parties in the case and on the Court. Such service may be accomplished by including a copy of the disposition in an attachment or addendum to the brief pursuant to the procedures set forth in Local Rule 28(b).

proper jury instruction or verdict sheet and there was no objection to either the instruction or verdict sheet prior to submission of the case. Such cases are distinguishable on the ground that a defect in the charge or verdict sheet placed the appellant on notice of the potential for a defective verdict. *See, e.g., Fabri v. United Techs. Int'l, Inc.,* 387 F.3d 109, 116 (2d Cir.2004); *Jarvis v. Ford Motor Co.,* 283 F.3d 33, 56–57 (2d Cir.2002); *Denny v. Ford Motor Co.,* 42 F.3d 106, 111 (2d Cir.1994). In those cases, the cause of the inconsistent verdict was an error that could have been corrected prior to submission of the case to the jury. In this case, however, as both sides agree, the jury charge and verdict sheets were proper, and the error was solely attributable to the jury's failure to apply the instructions. Since the problem here is with the jury's *verdict* only, this case does not implicate Rule 51, Fed.R.Civ.P., which governs instructions to a trial jury on the law that affects the verdict.[8] *See Fogarty v. Near N. Ins. Brokerage, Inc.,* 162 F.3d 74, 79 (2d Cir.1998) ("The purpose of [Rule 51] is to allow the trial court an opportunity to cure any *defects* in the *instructions* before sending the jury to deliberate." (Emphasis supplied)).

Plaintiffs argue that *Denny* requires a ruling that Polaris waived its objection to the inconsistent jury verdict by its failure to seek re-submission of the issue before discharge of the jury. Our analysis in *Denny,* which found no waiver in other circumstances, is not inconsistent with our decision in this case. In *Denny,* Ford objected to the submission to the jury of claims based on strict products liability as well as implied warranty, on the ground that "they were indistinguishable under New York law and that submission of both could lead to an inconsistent verdict." *Id.* at 108. The district court disagreed and charged the jury under both theories; neither side objected to the content of the verdict form, *id.* at 109; the confused jury found for Ford on strict liability but for plaintiff on implied warranty; and Ford requested no re-instruction or re-submission on any aspect of the verdict. *Id.* at 110. We concluded that Ford preserved its objection to the inconsistent verdict on the ground that the inconsistency was caused by an error in the jury instruction to which the court had previously been alerted, so that "[a] request by Ford for resubmission ... would have been no more than a renewal of Ford's earlier objection to the instructions." *See id.* at 111.

In so doing, we explained that the step needed to preserve an objection to an inconsistent verdict depends on the type of verdict employed. In particular, we questioned the prior caselaw of this Circuit that suggested there can be no waiver of an objection to an inconsistent jury verdict in a Rule 49(a) special verdict, *see Auwood v.*

---

8. Rule 51(c), Fed.R.Civ.P., reads as follows:

(1) A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection.

(2) An objection is timely if:

(A) a party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments, as provided by Rule 51(b)(1), objects at the opportunity for objection required by Rule 51(b)(2); or

(B) a party that has not been informed of an instruction or action on a request before the time for objection provided under Rule 51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused.

Unpreserved objections to the instructions that affect "substantial rights" are reviewed for plain error. *See* Rule 51(d)(2), Fed. R.Civ.P.

*Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 890–91 (2d Cir.1988), while there can be such a waiver in a Rule 49(b) general verdict, *see Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 54–57 (2d Cir. 1992); *Denny*, 42 F.3d at 110–11 (holding that "the basis for a sharp distinction regarding waiver between Rule 49(a) verdicts [special verdicts] and Rule 49(b) verdicts [general verdicts] is unclear," and that "[w]e are not persuaded that our caselaw has either drawn such a sharp distinction or should"); *see also Jarvis*, 283 F.3d at 68 (same). Instead, we urged "[a] case-by-case application of the principles of waiver" under both Rules 49(a) and 49(b). *Denny*, 42 F.3d at 111.

*Denny* does not help the plaintiffs in this case. By its terms, *Denny* urges a case-by-case application of the principles of waiver in the context of inconsistent jury verdicts. *See id.* Here, both sides agree that the charge and verdict sheet were proper; quite rightly, no one objected to either of them prior to the submission of the case to the jury. The inconsistency was caused by the jury's improper application of faultless instructions, and the defendant objected at the first opportunity when the inconsistency became known. Furthermore, where the cause of an inconsistent verdict is the jury's misapplication of instructions that are proper, it is of little consequence what type of verdict was presented to the jury (general, special, or hybrid), because such a verdict could not have been anticipated *ex ante*.

Accordingly, we conclude that Polaris preserved its objection to the inconsistent verdict by bringing the anomaly to the court's attention at a time when it could be cured, notwithstanding that Polaris advocated a mistrial.

### D

■ Having concluded that Polaris preserved its challenge to the jury verdict, we consider whether the verdict was actually inconsistent. We conclude that it was.

■ Under New York law, a verdict is inconsistent if a jury's finding "on one claim necessarily negates an element of another cause of action." *Barry v. Manglass*, 55 N.Y.2d 803, 447 N.Y.S.2d 423, 424, 432 N.E.2d 125 (1981). Both negligence and strict products liability (under New York Law) require a showing of a product "defect." "It is well settled that[ ] whether [an] action is pleaded in strict products liability . . . or negligence, it is a consumer's burden to show that *a defect* in the product was a substantial factor in causing the injury." *Fritz*, 306 A.D.2d at 898, 762 N.Y.S.2d 711 (internal citation and quotation marks omitted) (alteration in original) (emphasis supplied) (collecting cases).

■ Both claims entail a showing that a product defect caused the injury; but to show negligence, the plaintiff must also prove that the injury caused by the defect could have been reasonably foreseen by the manufacturer:

> A cause of action in *strict products liability* lies where a manufacturer places on the market a product which has *a defect* that causes injury.
>
> \* \* \* \* \* \*
>
> A cause of action in *negligence* will lie where it can be shown that a manufacturer was responsible for *a defect* that caused injury, and that the manufacturer *could have foreseen the injury*.

*Robinson v. Reed–Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720–21, 403 N.E.2d 440 (1980) (emphasis supplied). Thus a manufacturer whose defective product causes injury can be held strictly liable even if not negligent, but not the reverse.

Consistent with New York law, the district court instructed the jury on the negligence claim as follows:

If you find that the ATV was not defective when put on the market by defendant, or that in its defective condition the ATV was not reasonably certain to be dangerous when put into normal use, or that the defendant used reasonable care in designing the ATV and had no knowledge of the defect when the ATV was put on the market, you *will* find that the defendant was not negligent.

If you find, however, that the ATV was defective when put on the market by defendant, and that the defect was reasonably certain to be dangerous when put into normal use, that defendant failed to use reasonable care in designing the ATV, or that even though defendant used reasonable care in designing the ATV, defendant learned of the defect before putting the ATV on the market, you *will* find the defendant was negligent.

(Emphasis supplied). The court thus explained that a finding of negligence mandated a corollary finding of strict products liability. The jury ignored or misunderstood that clear instruction, and found negligence while finding for Polaris on the claim of strict liability. Where (as here) the only disputed liability issues at trial (other than Mr. Kosmynka's own negligence) were whether a defect in the ATV caused the injury and whether the injury was foreseeable to Polaris, the finding of no defect "necessarily negative[d] an element" of the negligence claim, *i.e.*, that "the defect was a proximate cause of the accident." *Manglass*, 447 N.Y.S.2d at 428, 432 N.E.2d 125.

In entering judgment, the district court failed to remedy the inconsistent verdict, either by an "attempt to harmonize [the jury's] answers," *Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), which we concede is impossible; or by resubmitting the case to the jury in an effort to have the jury correct the inconsistency; or by retrial. The judgment must therefore be vacated.

## CONCLUSION

For the foregoing reasons, we hereby V<small>ACATE</small> the judgment and R<small>EMAND</small> for retrial.