In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 19-2089 & 19-2173

CONTINENTAL VINEYARD, LLC, and INDECK-PASO ROBLES LLC,

*Plaintiffs-Appellants, Cross-Appellees,*

*v.*

VINIFERA WINE CO., LLC, and RANDY DZIERZAWSKI,

*Defendants-Appellees, Cross-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 3375 — **Thomas M. Durkin**, *Judge.*

_____

ARGUED JUNE 1, 2020 — DECIDED SEPTEMBER 2, 2020

_____

Before RIPPLE, WOOD, and SCUDDER, *Circuit Judges.*

WOOD, *Circuit Judge.* This case pits two wine enterprises against one another. In one corner, we have Gerald Forsythe, who formed Indeck-Paso Robles, LLC ("Indeck") for the purpose of creating and managing a wine-grape vineyard. In the other, we have Randy Dzierzawski, who started out as Forsythe's business associate and vice-president and later branched out on his own. In time, Forsythe became convinced

that Dzierzawski and his company stole valuable business opportunities from Forsythe's operations. Litigation ensued, with an ultimate outcome largely favoring Dzierzawski, but also giving Forsythe's company $285,731 as disgorgement.

Forsythe and his related companies have appealed from the judgment in favor of the Dzierzawski parties, largely on the ground of allegedly fatal inconsistencies in the jury's verdict. Dzierzawski has cross-appealed from the disgorgement order. Forsythe argues that Dzierzawski stole a corporate opportunity from his company, but we agree with the district court that the evidence does not support such a finding. As for the verdicts, we are left to make the best of a bad thing. They are hard to reconcile at first glance, but neither party made any objection until several weeks after the jury was disbanded. Without such a contemporaneous objection, the court was left on its own. It resolved the uncertainties in a way that respected what the jury said. Finally, with respect to the cross-appeal, we see no reversible error in the disgorgement order. Although the case is something of a procedural mess, we conclude in the final analysis that the judgment of the district court should be affirmed.

**I**

We begin with a closer look at the events leading up to this litigation, as the issues on appeal are largely factual. In 2006, Indeck purchased Shimmin Canyon Vineyard in Paso Robles, California. Forsythe later established Continental Vineyard, LLC ("Continental"), as a wholly-owned subsidiary of Indeck, for the purpose of operating Shimmin Canyon. Forsythe appointed himself chairman and CEO and named Dzierzawski president. In that capacity, Dzierzawski was in charge of all of Continental's day-to-day operations.

At first, Forsythe and Dzierzawski wanted Continental to operate Shimmin Canyon exclusively as a grape-growing enterprise. Later, however, they decided to get into the business of winemaking. Continental's first step was to hire Chris Cameron, an experienced vintner, as Director of Winemaking.

In 2010, Cameron and Dzierzawski, on behalf of Continental, met with Mark Esterman, a wine buyer for the Meijer grocery store chain, to discuss developing custom wine for the store. This was an ambitious plan: fulfilling Meijer's need would have required Continental to purchase wine from other suppliers, because Shimmin Canyon's crop was too small and did not include all the right varieties for Meijer's desired wines. After the Esterman meeting, Dzierzawski informed Forsythe about the Meijer opportunity. Forsythe was uninterested; he stated that Shimmin Canyon was already a money-loser and that he did not want to invest additional capital into buying "juice" from other suppliers. A week or two later, Dzierzawski again urged Forsythe to pursue the Meijer opportunity, but Forsythe again declined.

Only then did Dzierzawski decide to take matters into his own hands. Along with Cameron, he formed Vinifera Wine Company ("Vinifera") and, working with Meijer, he obtained his wines (Zinfandel and Moscato) from third parties. In time, Vinifera began to source some of its wine from Continental. It paid Continental to bottle, store, and ship wine under Vinifera's label. Continental also worked with at least two other companies. Cameron provided some winemaking services to these companies, but he worked primarily for Vinifera. His services to Vinifera were extensive, and he became concerned that Vinifera was not compensating Continental properly for the use of its resources.

At trial, Cameron testified that Dzierzawski concealed the extent of Vinifera's operations from Forsythe during this period. In addition, Cameron accused Dzierzawski of using his position as Continental's president to sell the same wine under both the Continental and Vinifera labels and to assign lower prices to the Vinifera wines, thereby siphoning sales away from Continental. Cameron also reported that Dzierzawski instructed Continental employees to enter these identical wines in the same wine contests to enhance the reputation and market share of the cheaper Vinifera-labelled wines.

In 2012, in anticipation of an audit of Continental, Dzierzawski disclosed the scope of Vinifera's operations to Forsythe. Forsythe responded angrily, stating that he had made it clear that Continental was not to purchase wine from other vineyards. He demanded that Dzierzawski shutter operations at Vinifera. Dzierzawski initially agreed but quickly thought better of it and resigned from Continental and Indeck. In short order, Continental and Indeck (to which we refer collectively as Continental) sued Dzierzawski and Vinifera, alleging that Dzierzawski had injured them by starting a competing business while he was still serving as Continental's vice president.

## II

Continental raised five theories in its complaint against Dzierzawski and Vinifera: (1) breach of fiduciary duty for failing to act in good faith; (2) breach of fiduciary duty of loyalty for self-dealing; (3) unfair competition; (4) unjust enrichment; and (5) usurpation of a corporate opportunity. The district court granted summary judgment in favor of the defendants on the corporate opportunity theory but allowed the other four counts to proceed to trial. A jury found the defendants liable on the unfair competition contention, but it ruled in

their favor on the other three theories. But its verdict with respect to unfair competition was opaque: despite rendering a verdict seemingly in Continental's favor, the jury left the damages section on the verdict form blank. After the jury returned its verdict, the court suggested that it should poll the jury members individually to ensure that the blank damages section indicated that they intended to award no damages. Counsel agreed, and so the court polled the jurors, who unanimously responded that this was, in fact, their intention.

Continental did not object to the jury's verdict at the time that it came down. Several weeks after the jury was discharged, however, it filed a timely motion for a new trial under Federal Rule of Civil Procedure 59. It argued that the jury's verdict was inconsistent in two respects: first, it contended that it is impossible to reconcile the finding that Dzierzawski was liable for unfair competition with its verdict that he was not liable for breach of the fiduciary duty of loyalty; and second, it argued that the jury's decision not to award damages for Continental could not be squared with its finding that Dzierzawski was liable for unfair competition.

The district court denied the motion for a new trial. It found that Continental had waived its opportunity to raise the argument that the jury's verdict was inconsistent, because it had failed to make an objection to the jury instructions. See FED. R. CIV. P. 51. The court did, however, grant Continental's request for disgorgement as alternative relief, and ordered Dzierzawski to pay $285,731 to Continental. The court observed that "the jury's verdict is merely advisory on the issue of equitable disgorgement, as it is an equitable remedy to be imposed by the Court as opposed to the jury." (internal quotation marks omitted). Continental and Indeck appealed both

from the denial of their motion for new trial and from the adverse ruling on summary judgment on their claim under the corporate-opportunity doctrine. Vinifera and Dzierzawski filed a cross-appeal challenging the disgorgement award.

## III

### A

Before turning to the main event, we briefly touch on jurisdiction and choice of law. Continental filed its complaint in the Northern District of Illinois; it relied on diversity jurisdiction under 28 U.S.C. § 1332. The two plaintiffs, Continental Vineyard, LLC and Indeck-Paso Robles LLC, are both Delaware limited-liability companies. Continental's sole member is Indeck-Paso Robles LLC, and Indeck's sole member is Indeck Energy Services, Inc., an Illinois corporation with its principal place of business in Illinois. That means that both Continental and Indeck are Illinois citizens for purposes of section 1332. *Wise v. Wachovia Sec., LLC,* 450 F.3d 265, 267 (7th Cir. 2006). Vinifera is a Michigan limited-liability corporation whose sole member at the time of suit was Dzierzawski. He is a citizen of Michigan. Finally, the amount in controversy exceeds $75,000 (by a comfortable margin).

Personal jurisdiction is a bit of a puzzle, but the time for making an objection passed and it is now too late to raise one. See FED. R. CIV. P. 12(b)(2), (h)(1). Continental chose the Illinois forum and contended that Illinois's courts have specific personal jurisdiction over Vinifera and Dzierzawski based on Vinifera's sale of wine in Illinois and the harms Continental suffered in that state because of those sales. Given the waiver of this point, we make no comment on the adequacy of these

allegations under cases such as *Walden v. Fiore*, 571 U.S. 277 (2014).

The choice-of-law principles of the forum state, Illinois, govern here. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The parties agree that Illinois directs us to the laws of Michigan and Delaware.

B

1

Moving on to the heart of the appeal, we begin with the district court's handling of Continental's motion for a new trial. We need to clear away some underbrush before we tackle that issue head-on. As we noted earlier, Continental asserted that a new trial was necessary because of inconsistencies in the jury's verdict, which took the form of a general verdict with answers to written questions, as contemplated by Federal Rule of Civil Procedure 49(b).

The district court, in an order issued December 12, 2018, concluded that the jury had returned irreconcilably inconsistent verdicts when it found Dzierzawski liable for unfair competition, implying that he injured the plaintiffs, yet at the same time it exonerated him on the charge that he owed and breached a fiduciary duty to Continental "and/or" Indeck. Faced with this conflict, it turned to the question whether Continental waived the inconsistency argument "by failing to raise it at the instruction conference or immediately after the jury's verdict," as required by Rule 51. In this connection, it noted that three circuits take the position that a failure to raise this type of argument before the jury is discharged leads to waiver. See *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006); *Oja v. Howmedica, Inc.*, 111 F.3d 782, 790 (10th Cir.

1997); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995). The Seventh Circuit, however, while acknowledging the value of a waiver rule, see *Strauss v. Stratojac Corp.*, 810 F.2d 679, 683–84 (7th Cir. 1987) (Rule 49(a) special verdicts), has never formally adopted this position for general verdicts under Rule 49(b). The district court then found that Continental had waived its objection to the inconsistencies among the general verdict answers when it failed to seek a jury instruction forbidding the jury to return a verdict in the plaintiffs' favor on unfair competition while ruling for the defendants on breach of fiduciary duty. It then ordered additional briefing on the question whether plaintiffs' failure to preserve their objection to the inconsistent verdicts affected the outcome of the trial.

The court also preliminarily addressed Continental's other concern, which was the finding of liability for unfair competition coupled with a finding of no damages. It ruled that these two findings were not necessarily inconsistent. Instead, they might have reflected a failure of proof on Continental's part. Continental had introduced evidence of Vinifera's profits and Dzierzawski's share of that pot, but it failed to show how those profits damaged Continental or Indeck. Before finally ruling, however, the court also called for further briefing on this point.

Finally, the court allowed Continental to proceed with its claim for equitable disgorgement, if further research indicated that Michigan law permits such a remedy.

After the court received the requested supplemental briefs, it resolved the remaining issues in an order of May 10, 2019. First, it found that the outcome of the trial had not been affected by the conflict between the unfair-competition and

breach-of-fiduciary-duty verdicts. Although it had been inclined otherwise in the December 12 order, it stated that its earlier "reasoning failed to account for the fact that Plaintiffs brought unjust enrichment as a stand-alone claim, and the jury issued a separate verdict in Defendants' favor on unjust enrichment." There was no material difference, the court found, "between the jury's consideration of the unjust enrichment instruction and the damages the jury would have considered if it had reached damages under the instruction for breach of fiduciary duty." The court also declined to revisit its conclusion that plaintiffs waived any inconsistency argument when they failed to object to the jury instructions.

Looking at the zero-damage award on the unfair-competition count, the court found support in the record for this outcome in the defendants' expert's report, which pointed out that Vinifera provided considerable benefits to Continental, even while it was engaged in the objectionable operations. Last, noting that the jury's verdict was only advisory with respect to the equitable disgorgement issue, the court found it appropriate to follow the Restatement (Third) of Unfair Competition § 37 (Am. Law Inst. 1995), which permits disgorgement of net profits, when ascertaining the probable content of Michigan law. Examining the evidence and excluding sales that were unaffected by the unfair competition, the court awarded a total of $285,731 as net profits that Vinifera and Dzierzawski had to return to Continental and Indeck.

2

Continental first attacks the district court's finding that it waived its objection to the inconsistent verdicts, relying on three cases from this court: *Gordon v. Degelmann*, 29 F.3d 295 (7th Cir. 1994); *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d

1008 (7th Cir. 1998); and *Turyna v. Martam Construction Company, Inc.*, 83 F.3d 178 (7th Cir. 1996). None of those, however, is directly on point, nor for that matter is Rule 51. We begin with the question of the time when an objection to inconsistent verdicts should be made, and we then turn to the details of this case.

In *Gordon*, a jury found a municipality liable under state law, but it absolved an individual defendant. The parties filed no contemporaneous objections, but the district court granted judgment as a matter of law to the municipality on the ground that vicarious liability required primary liability. With respect to the inconsistent verdicts, we wrote: "If the problem is not caught before the jury disbands (and no one noticed this conflict until post-trial motions), the proper thing to do is to hold a new trial with respect to all affected parties." 29 F.3d at 298–99. We ultimately upheld the district court's grant of judgment as a matter of law on other grounds.

*Gordon* differs from the present case, however, in that it concerns inconsistent verdicts for multiple defendants. The jury's verdict was irreconcilably inconsistent, because resolving the inconsistency would have required either imposing liability on a defendant the jury had absolved or freeing a defendant from liability in the face of the jury's finding to the contrary—and as we said, "there is no priority among inconsistent verdicts." *Id.* at 298.

Pertinent differences also exist between our case and *Timm*. There, we commented in dicta that "[a] judge cannot treat one verdict … as the jury's 'true' disposition to which the other verdict must be conformed … If inconsistency escapes notice until after the jury has disbanded, the proper thing to do is to hold a new trial." 137 F.3d at 1010. In *Timm*, however,

we ultimately found that an award of punitive damages was not inconsistent with a lack of compensatory damages, and so no new trial was needed.

*Turyna* is also distinguishable in several pertinent respects. The district judge there asked the lawyers to stay within five minutes of the courtroom while the jury deliberated, because he "hated to have the jury wait once it was ready with a verdict." 83 F.3d at 180. The jury thus came back to an empty room: defense counsel waived his right to be present while the verdict was read, and plaintiff's counsel was absent for unknown reasons. Thus, "no one with any incentive to take action was present" when the jury returned its verdict. *Id*. Unfortunately, the jury returned a hopelessly muddled verdict that this court determined could not be salvaged. We did not address waiver because the jury verdict was so inconsistent that only a new trial could fix it.

That leaves the question what to do when a litigant fails to object to an apparently inconsistent general verdict with written questions before the jury disbands. We flagged this issue but did not resolve it in *Fox v. Hayes*, 600 F.3d 819, 844 (7th Cir. 2010), and as we noted earlier, three of our sister circuits follow the rule that the failure to lodge a contemporaneous objection to an inconsistent verdict constitutes a waiver. See *Kosmynka* (2d Cir.); *Oja* (10th Cir.); and *Home Indem. Co.* (9th Cir.).

We find the reasoning of our sister circuits to be sound, and thus now adopt the position that a party wishing to challenge a jury's general verdict on the ground of inconsistent verdicts must normally make a contemporaneous objection before the jury disbands. Without such an objection, the court's option to fix the problem by resubmission to the jury

as contemplated by Rule 49(b)(3)(B), vanishes. Indeed, this is implicit in Rule 49(b), which strikes us as a better match for guidance in this situation than Rule 51. But we realize that this rule will not fit all situations. Two in particular come to mind. The first, exemplified by our decision in *Turyna*, arises when a party had no meaningful opportunity to object to the jury's verdict. If there was no way a party reasonably could have recognized the inconsistency, because counsel was compelled to be out of the room or otherwise unable to object, then there is no waiver. The second situation — the one at issue in *Gordon* — arises if the jury's verdict resists all efforts at reconciliation, such that the grant of a Rule 59 motion for new trial is the only remedy possible.

Neither of those exceptions to the contemporaneous objection rule applies here. Continental had ample opportunity to object to the inconsistent verdict. When the jury announced its verdict, the court polled each juror individually. The court also held a sidebar to address the jury's decision to leave blank the line for damages attributable to the unfair competition it had found. With the input of counsel, the court again polled each jury member to ensure that he or she intended to award no damages. Each juror stated that this was, in fact, his or her intent. After that, the jurors left the courtroom but were instructed to remain in the jury room. The court then asked the parties if there was anything more they wished to put on the record, and both parties declined the opportunity.

Continental thus had many opportunities to object to the verdict. This is not a case like *Turyna*, where counsel could not object because of a bizarre confluence of circumstances. Here, counsel was in the room, understood the situation, and was expressly invited by the court to raise any concerns.

Nor does the second exception fit this case. Neither of the two alleged inconsistencies that Continental invokes is truly impossible to reconcile, as were the vicarious liability findings in *Gordon*. Indeed, though we have proceeded on the assumption that inconsistencies exist, the district court's own treatment of the case suggests otherwise. A careful look at both the answers and the record shows that any clumsiness in the jury's responses was not so serious as to prevent harmonization or to affect anyone's substantial rights. See FED. R. CIV. P. 61 ("Unless justice requires otherwise, no error … by the court or a party … is ground for granting a new trial [or] for setting aside a verdict. … At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

The alleged inconsistencies stem from the apparent contrast between the jury's findings on Questions 1 and 2 (fiduciary duty of loyalty) and its finding in Question 3 to the effect that Dzierzawski "engaged in unfair competition with respect to Continental Vineyards, LLC and/or Indeck-Paso Robles, LLC," though he did not do so through fraud, with willful or reckless disregard of the plaintiffs' rights, or with malicious intent. Here is how the jury answered Questions 1 and 2:

> 1a. Have Plaintiffs proven that Randy Dzierzawski owed a fiduciary duty of loyalty to Continental Vineyards, LLC and/or Indeck-Paso Robles, LLC and that Randy Dzierzawski breached his fiduciary duty of loyalty to Continental Vineyards, LLC and/or Indeck-Paso Robles LLC by failing to act in good faith?
>
> Yes_____      No _____X_____
>
> If you answered "Yes" proceed to Question 1b.

If you answered "No" proceed to Question 2.

2a. Have Plaintiffs proven that Randy Dzierzawski owed a fiduciary duty of loyalty to Continental Vineyards, LLC and/or Indeck-Paso Robles, LLC and that Randy Dzierzawski engaged in self-dealing by appearing on both sides of any transactions between Vinifera Wine Co., LLC and Continental Vineyards, LLC (and/or between Vinifera Wine Co., LLC and Indeck-Paso Robles, LLC)?

Yes____X_____    No _____

If you answered "Yes" proceed to Question 2b.
If you answered "No" proceed to Question 3.

2b. Has Randy Dzierzawski proven that all self-dealing transactions with Continental Vineyards, LLC and Indeck-Paso Robles, LLC were entirely fair?

Yes _____ No _____X_____

Proceed to Question 2c.

2c. Has Randy Dzierzawski proven that the Acquiescence Defense applies to all self-dealing transactions with Continental Vineyards, LLC and Indeck-Paso Robles, LLC?

Yes _____X_____ No _____

Proceed to Question 3 [Unfair Competition].


What are we to make of these answers? Unfortunately, several are not as clear as they might be, because they respond to compound questions, and so it is difficult to know which part of the question prompted the jury's choice. Take

Question 1a. The jury might have concluded that Dzierzawski did not owe a fiduciary duty of loyalty to either Continental, Indeck, or both. That would have supported its "no" answer. Or the jury might have thought that Dzierzawski did owe a fiduciary duty to one or both of the plaintiffs, but that he did not breach any such duty by failing to act in good faith. In Question 2a, the jury answered the compound question in the affirmative, thus implicitly finding both that Dzierzawski owed a fiduciary duty to the plaintiffs and that he engaged in self-dealing "by appearing on both sides of [a] transaction[]." The jury then found in Question 2b that Dzierzawski had failed to prove that all self-dealing transactions were "entirely fair," but it concluded in Question 2c that he did show that the "Acquiescence Defense" applied to all the self-dealing transactions.

Those findings do not necessarily conflict with the jury's reaction to the unfair-competition count. There it found that, while Dzierzawski did engage in unfair competition with Continental and Indeck, he did not do so fraudulently, with willful or reckless disregard of plaintiffs' rights, or maliciously. (The jury was also asked in Question 8a whether Vinifera engaged in unfair competition with respect to either plaintiff, but it answered in the negative.)

In Question 4, it found that Dzierzawski had not been unjustly enriched at Continental's or Indeck's expense, and in Question 9, it made the same finding with respect to Vinifera. The finding with respect to Dzierzawski can stand as long as it is correct that acts of unfair competition may not necessarily inflict damage on the victim, or (as the district court found) the plaintiffs simply failed to prove the amount of damage they suffered.

Even if some residual tension remains among these findings, we agree with the district court that Continental cannot show that its substantial rights were affected by the court's refusal to grant a new trial. A party's substantial rights are affected only when an error is "of such great magnitude that it probably changed the outcome of the trial." *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 434 (7th Cir. 2009) (quoting *United States v. Noel*, 581 F.3d 490, 499 (7th Cir. 2009). The district court offered sound reasons for why Continental's substantial rights were not affected by its decision not to start over again. We describe the district court's action that way because, as we already have noted, it was no longer possible for the judge to instruct the first jury to resolve any possible inconsistencies, because it had been disbanded. We reiterate that we do not agree with the district court that the source of this problem lay in the failure of the jury instructions to warn against inconsistent verdicts, nor do we see Rule 51 as particularly helpful here. The problem lay in the use of compound questions, which ultimately led to confusion when the verdict was received. The latter confusion should have been addressed by reference to Rule 49. Once the moment for using Rule 49 passed, all that was left was a possible motion under Rule 59(a) for a new trial. Normally, however, it is Rule 49(b)(3)(C) and (4) that govern whether a new trial must be ordered in this situation.

In addition to the reasons we already have given, there are other grounds for finding that plaintiffs' substantial rights were not affected by the apparent inconsistency in the jury's verdicts. The instructions for both breach of fiduciary duty and unfair competition told the jury that it could award damages for lost profits. Yet only the instruction for breach of fiduciary duty (not the one on unfair competition) directed the

jury to consider whether Dzierzawski was unjustly enriched by the breach. The district court also noted that the jury independently had considered whether Dzierzawski was unjustly enriched when in response to Question 4 it found him not liable on Continental's stand-alone unjust-enrichment count. The jury thus necessarily considered whether unjust enrichment had occurred and determined that it had not. In the fact of these findings, Continental cannot show that its substantial rights were affected by the alleged inconsistencies in the jury's verdict.

Continental also alleges that it is impossible to reconcile the jury's decision to find Dzierzawski liable for unfair competition with its decision to award $0 in damages. Continental argues that by awarding $0 in damages, the jury necessarily found that Continental was not injured, making the verdict irreconcilably inconsistent as a matter of law. See *Thomas v. Stalter*, 20 F.3d 298, 303 (7th Cir. 1994) (granting a motion for a new trial where the jury instructions specifically required the jury to find damages before it could find liability).

The district court rejected this contention, and so do we. The damages available for unfair competition are (1) lost profits and (2) expenses incurred. Looking to the defendants' expert, the court concluded that there was a sufficient basis for the jury to find that Continental had lost $0 in profits. The expert's report stated that the minimum amount of expenses that Continental incurred as a result of the defendants' conduct was $5,000. At the same time, there was evidence that Continental actually profited from Dzierzawski's conduct. Continental's controller testified that Vinifera brokered sales of Continental wine and that Dzierzawski's promotion of Vinifera created opportunities for the distribution and sale of

Continental wines. Further testimony indicated that Continental may have benefited by as much as $180,000 in sales. The jury could have concluded that the $5,000 in expenses that Continental incurred at a minimum was offset by benefits that Vinifera created for Continental.

Mindful of the great respect owed to jury verdicts, we agree with the outcome reached by the district court. Although the verdicts at first glance appear to be inconsistent, a closer look shows that they can be reconciled. The jury apparently concluded that, although Dzierzawski through Vinifera had competed with Continental unfairly, Continental ultimately gained more than it lost from Dzierzawski's conduct. That conclusion could have been reinforced by the lack of concrete proof of loss from Continental. The jury thus could have determined that the amount of lost profits was negative; that is to say, that Continental's profits grew rather than declined as a result of Dzierzawski's conduct. Because the verdicts can be resolved, the district court was correct to uphold the jury's verdict and deny Continental's motion for a new trial.

## IV

Continental and Indeck also ask us to reverse the district court's finding that the defendants were entitled to summary judgment on the claim that Dzierzawski illegally usurped a corporate opportunity from Forsythe and Continental. Delaware law supplies the rule of decision for this claim. Under the corporate-opportunity doctrine, the officer of a corporation may not take a business opportunity for himself if: (1) the corporation of which he is an officer is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the

opportunity for his own, the corporate fiduciary will thereby be placed in a position inimical to his duties to the corporation. *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 155 (Del. 1996). Under Delaware law, "the determination of [w]hether or not a director has appropriated for himself something that in fairness should belong to the corporation is a factual question to be decided by reasonable inference from objective facts." *Id*. (internal quotation marks omitted). Delaware also recognizes a safe harbor, in which a corporate director or officer may pursue an opportunity otherwise covered by the primary doctrine if he first presents the opportunity to the corporation and the corporation declines to pursue it. *Id*. at 157 ("[P]resenting the opportunity to the board creates a kind of 'safe harbor' for the director, which removes the specter of a *post hoc* judicial determination that the director or officer has improperly usurped a corporate opportunity.").

The district court held that the Meijer contract qualified as a corporate opportunity for this purpose, but that Dzierzawski took the necessary steps to fall within the safe harbor. We agree. Dzierzawski approached Forsythe twice with the opportunity to source wines for Meijer. Both times, Forsythe explicitly and emphatically declined the opportunity, believing that the vineyard was already a money-loser. Dzierzawski thus fulfilled his duty to disclose the opportunity.

Lastly, Continental argues that a corporate officer must not only disclose the opportunity itself to the corporation; he must also disclose his intention personally to take advantage of the opportunity if the corporation turns it down. Because Dzierzawski did not make the latter disclosure, Continental contends, he is not eligible for the safe harbor. We are not persuaded. First, the weight of authority is not on Continental's

side. Continental has mustered in its support only one unreported case from the Delaware Chancery Court. *Grove v. Brown*, No. CV 6793-VCG, 2013 WL 4041495 (Del. Ch. Aug. 8, 2013). But even this case does not hold that an officer must disclose his intention to pursue an opportunity in order to avail himself of the safe harbor. In *Grove*, the court found that, while officers of a home-health agency may have discussed possible opportunities with their co-officers, they never made a formal presentation of the opportunity to the corporation. Because "[p]resenting an opportunity to [their partners was] not the same as presenting an opportunity to [the corporation]," the defendants could not avail themselves of the safe harbor. *Id*. at *10. Other than *Grove,* there appears to be nothing in Delaware law supporting the idea that an officer may not take advantage of the safe harbor of the corporate-opportunity doctrine unless he discloses both the opportunity and his intention to pursue it.

The district court correctly granted summary judgment on this count. Dzierzawski brought the Meijer opportunity to Forsythe, not once but twice. He was not required to do anything more under standard principles of corporate law.

## V

Dzierzawski and Vinifera may have felt that they won the battles but lost the war: after defeating in one way or the other Continental's theories at the jury trial, they found themselves subject to equitable disgorgement in the amount of more than $285,000. This is the subject of their cross-appeal. We review a district court's grant of equitable relief in the form of disgorgement for abuse of discretion. *Fed. Trade Comm'n v. Febre*, 128 F.3d 530, 534 (7th Cir. 1997). Once again, the district court looks to Illinois choice of law rules, see *Klaxon*. Illinois follows

the most-significant-contacts approach of the Restatement (Second) of Conflict of Laws for tort actions. See *Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023, 1031 (2000). For unfair-competition claims, that approach dictates that "the principal location of the defendant's conduct … will usually be given the greatest weight in determining" controlling state law. Restatement (Second) of Conflict of Laws § 145 cmt. F (1971). In this case, both parties agreed that Michigan was that state, because Vinifera earned most of its allegedly unjust profits there.

Dzierzawski offers two reasons why the district court abused its discretion in granting disgorgement. First, he argues that Michigan law does not recognize disgorgement as a remedy for unfair competition. Second, he argues that the district court made a commitment not to order disgorgement when it stated earlier that it planned to handle the equitable portion of the case strictly according to the determination of the jury.

It appears that no Michigan appellate court has upheld an award of disgorgement for unfair competition. In fact, no Michigan appellate court has ever addressed the issue. In the absence of guidance from Michigan's judiciary, the district court turned to the Restatement (Third) of Unfair Competition, which states that disgorgement is an appropriate remedy for unfair competition where "the actor engaged in the conduct with the intention of causing confusion or deception; and the award of profits is not prohibited by statute and is otherwise appropriate" based "upon a comparative appraisal of all the factors of the case." *Id*. § 37.

Dzierzawski argues that the district court's reliance on the Restatement was misplaced, because no Michigan court has

ever explicitly adopted section 37. That is not the way things work, however, when a district court is faced with silence from the state courts. In such a situation, the district court must make an educated guess about the likely content of state law. Here, it made sense to use the Restatement as a guide. Michigan courts have often relied on the Restatement in addressing novel issues of unfair competition. See, *e.g.*, *Janet Travis, Inc. v. Preka Holdings, L.L.C.*, 306 Mich. App. 266, 285–86 (2014) (relying upon section 21 of the Restatement); *Movie Mania Metro, Inc. v. GZ DVD's Inc.*, 306 Mich. App. 594, 611 (2014) (citing section 33 of the Restatement). We cannot say that the district court abused its discretion in relying upon the Restatement to establish the content of Michigan's law.

Dzierzawski next points to an order in which the district court stated that it would "be bound by [the jury's] liability finding across all of Plaintiffs' claims, whether seeking damages or equitable relief." Dzierzawski argues that this statement was binding law of the case and must prevail over any later decision by the district court about how to calculate monetary relief. But that makes no sense: of course district courts have the power to correct their own missteps, as Rule 59 underscores; the only question on appeal is whether the court landed in the right place. That is why we have held that the law-of-the-case doctrine does not prevent a district court from exercising its discretion to reconsider earlier interlocutory orders. *Williams v. C.I.R.*, 1 F.3d 502, 504 (7th Cir. 1993).

In any event, the court's earlier order is not at odds with its later disgorgement decision. Although the court did state that it would be bound by the jury's liability finding, it also stated, under a separate heading on "disgorgement," that "[d]isgorgement is an equitable remedy to be imposed by the

Court as opposed to a jury," and that the court might "order Dzierzawski to disgorge … money if the Court were to find that Dzierzawski acquired [it] as a result of his breach of fiduciary duties." The district court thus never made an unambiguous commitment not to award equitable remedies if the jury found the defendants not liable. We see no abuse of discretion in the court's decision to grant disgorgement.

## VI

We AFFIRM the decision of the district court.