OPINION OF THE COURT
 

 ClPARICK, J.
 

 In
 
 Robinson v Reed-Prentice Div. of Package Mach. Co.
 
 (49
 
 *236
 
 NY2d 471, 475), we held that a manufacturer is not responsible for injuries resulting from substantial alterations or modifications of a product by a third party that render the product defective or otherwise unsafe. The present case certifies the issue of whether a plaintiff, whose design claim is barred by the substantial modification defense stated in
 
 Robinson,
 
 may nevertheless maintain a claim for failure to warn of the consequences of such modification. Finding the issue to be an open one, the United States Court of Appeals for the Second Circuit certified the following question to our Court:
 

 “Can manufacturer liability exist under a failure to warn theory in cases in which the substantial modification defense would preclude liability under a design defect theory, and if so, is such manufacturer liability barred as a matter of law on the facts of this case, viewed in the light most favorable to the plaintiff?”
 

 We answer the first part of the certified question in the affirmative and decline to answer the second part of the question in deference to the Second Circuit’s review and application of existing principles of law to the facts, as amplified by the full record before that Court.
 

 I
 

 The facts as presented by the Circuit Court are as follows:
 

 “Luis Liriano, a seventeen-year-old employee in the meat department at Super Associated grocery store (‘Super’), was injured on the job in September 1993 when he was feeding meat into a commercial meat grinder whose safety guard had been removed. His hand was caught in the ‘worm’ that grinds the meat; as a result, his right hand and lower forearm were amputated.
 

 “The meat grinder was manufactured and sold in 1961 by Hobart Corporation (‘Hobart’). At the time of the sale, it had an affixed safety guard that prevented the user’s hands from coming into contact with the feeding tube and the grinding ‘worm.’ No warnings were placed on the machine or otherwise given to indicate that it was dangerous to operate the machine without the safety guard in place. Subsequently, Hobart became aware that a significant number of purchasers of its meat grinders had removed the safety guards. And in 1962, Hobart began issuing warnings on its meat grinders concerning removal of the safety guard.
 

 
 *237
 
 “There is no dispute that, when Super acquired the grinder, the safety guard was intact. It is also not contested that, at the time of Liriano’s accident, the safety guard had been removed. There is likewise no doubt that Hobart actually knew, before the accident, that removals of this sort were occurring and that use of the machine without the safety guard was highly dangerous. And Super does not question that the removal of the guard took place while the guard was in its possession.
 

 “Liriano sued Hobart under theories of negligence and strict products liability for, inter alia, defective product design and failure to warn. He brought his claims in the Supreme Court, Bronx County, New York. Hobart removed the case to the United States District Court for the Southern District of New York, and also impleaded Super as a third-party defendant, seeking indemnification and/or contribution. The District Court (Shira A. Scheindlin, Judge) dismissed all of Liriano’s claims except those based on failure to warn. Following trial, the jury concluded that the manufacturer’s failure to warn was the proximate cause of Liriano’s injuries and apportioned liability 5% to Hobart and 95% to Super. On partial retrial, limited to the extent of Liriano’s responsibility, the jury assigned, him 33
 
 [1]
 
 /s% of the responsibility. On appeal, Hobart and Super argue, inter alia, that the question of whether Hobart had a duty to warn Liriano should have been decided in their favor by the court, as a matter of law. It is this question that gives rise to the current certification.”
 

 II
 

 A manufacturer who places a defective product on the market that causes injury may be liable for the ensuing injuries (see,
 
 Codling v Paglia,
 
 32 NY2d 330, 342). A product may be defective when it contains a manufacturing flaw, is defectively designed or is not accompanied by adequate warnings for the use of the product (see,
 
 Codling v Paglia,
 
 32 NY2d 330,
 
 supra; Micallef v Miehle Co.,
 
 39 NY2d 376;
 
 Torrogrossa v Towmotor Co.,
 
 44 NY2d 709; see
 
 also, Robinson v Reed-Prentice Div. of Package Mach. Co.,
 
 49 NY2d 471, 478,
 
 supra).
 
 A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known
 
 (Rastelli v Goodyear Tire & Rubber Co.,
 
 79 NY2d 289, 297). A manufacturer also has a duty to warn of the danger of unintended uses of a product provided these uses are reasonably foreseeable
 
 (see, Lugo v LJN Toys,
 
 75 NY2d 850;
 
 McLaughlin v Mine Safety Appliances Co.,
 
 11 NY2d 62; 1 Weinberger, New York Products Liability, § 17:07, at 17-10 [2d ed]).
 

 
 *238
 
 A manufacturer is not liable for injuries caused by substantial alterations to the product by a third party that render the product defective or unsafe
 
 (Robinson v Reed-Prentice Div. of Package Mach. Co.,
 
 49 NY2d 471,
 
 supra).
 
 Where, however, a product is purposefully manufactured to permit its use without a safety feature, a plaintiff may recover for injuries suffered as a result of removing the safety feature
 
 (Lopez v Precision Papers,
 
 67 NY2d 871, 873).
 

 Several intermediate appellate courts have interpreted
 
 Robinson
 
 to mean that, where a substantial alteration of a product occurs, an injured party is also precluded from asserting a claim for failure to warn
 
 (see, e.g., Bonilla v Schjeldahl, Inc.,
 
 242 AD2d 651;
 
 Ernest v S.M.S. Eng’g,
 
 223 AD2d 801, 803;
 
 Frey v Rockford Safety Equip. Co.,
 
 154 AD2d 899). Relying on
 
 Robinson
 
 and these lower court decisions, Hobart urges that the plaintiff’s failure-to-warn claim should be barred as a matter of law.
 
 Robinson,
 
 however, did not resolve the issue of whether preclusion of a claim for defective design because of substantial alteration by a third party should also bar a claim for failure to warn.
 

 This Court’s rationale in
 
 Robinson
 
 stemmed from the recognition that a manufacturer is responsible for a “purposeful design choice” that presents an unreasonable danger to the user
 
 (see, Robinson v Reed-Prentice Div. of Package Mach. Co., supra,
 
 49 NY2d, at 480). This responsibility derives from the manufacturer’s superior position to anticipate reasonable uses of its product and its obligation to design a product that is not harmful when used in that manner. However, this duty is not open-ended, and it is measured as of the time the product leaves the manufacturer’s premises. Thus, a manufacturer is not required to insure that subsequent owners and users will not adapt the product to their own unique uses. That kind of obligation is much too broad and would effectively impose liability on manufacturers for all product-related injuries
 
 (id.,
 
 at 480-481).
 

 While this Court stated that principles of foreseeability are inapplicable where there has been a substantial modification of the product, that discussion was limited to the manufacturer’s responsibility for
 
 defective design
 
 where there had been a substantial alteration of a product by a third party
 
 (id.,
 
 at 479, 480). Thus, this Court stated that a manufacturer’s duty “does not extend to
 
 designing
 
 a product that is impossible to abuse or one whose safety features may not be circumvented” and the manufacturer need not trace its “product through every link in
 
 *239
 
 the chain of distribution to insure that users will not adapt the product to suit their own unique purposes”
 
 (id.,
 
 at 480-481 [emphasis added]).
 
 [1]
 

 Hobart and
 
 amici
 
 argue that the rationale of
 
 Robinson
 
 is equally applicable to failure-to-warn claims where a substantial modification of the product occurs and that application of the failure-to-warn doctrine in these circumstances would undermine
 
 Robinson’s
 
 policy justification and destroy its purpose. This Court is not persuaded that the existence of a substantial modification defense precludes, in all cases, a failure to warn claim.
 

 The factors militating against imposing a duty to design against foreseeable post-sale product modifications are either not present or less cogent with respect to a duty to warn against making such modifications. The existence of a design defect involves a risk/utility analysis that requires an assessment of whether "if the design defect were known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner”
 
 (Voss v Black & Decker Mfg. Co.,
 
 59 NY2d 102, 108;
 
 see also, Denny v Ford Motor Co.,
 
 87 NY2d 248, 257). Such an analysis would be unreasonably complicated, and may very well be impossible to measure, if a manufacturer has to factor into the design equation all foreseeable post-sale modifications. Imposition of a duty that is incapable of assessment would effectively result in the imposition of absolute liability on manufacturers for all product-related injuries
 
 (see, Robinson v Reed-Prentice Div. of Package Mach. Co., supra,
 
 49 NY2d, at 481). This Court has drawn a policy line against that eventuality.
 

 These concerns are not as strongly implicated in the context of a duty to warn. Unlike design decisions that involve the consideration of many interdependent factors, the inquiry in a duty to warn case is much more limited, focusing principally on the foreseeability of the risk and the adequacy and effectiveness of any warning. The burden of placing a warning on a product is less costly than designing a perfectly safe, tamper-resistant product. Thus, although it is virtually impossible to design a product to forestall all future risk-enhancing modifica
 
 *240
 
 tions that could occur after the sale, it is neither infeasible nor onerous, in some cases, to warn of the dangers of foreseeable modifications that pose the risk of injury.
 

 Furthermore, this Court has held that a manufacturer may be liable for failing to warn against the dangers of foreseeable misuse of its product
 
 (see, Lugo v LJN Toys,
 
 75 NY2d 850,
 
 supra; Kriz v Schum,
 
 75 NY2d 25; 1 Weinberger,
 
 op. cit.,
 
 § 17:07). No material distinction between foreseeable misuse and foreseeable alteration of a product is evident in this context. Thus, the rationale of
 
 Lugo v LJN Toys
 
 should apply to both situations.
 
 [2]
 

 This Court has also recognized that, in certain circumstances, a manufacturer may have a duty to warn of dangers associated with the use of its product even after it has been sold. Such a duty will generally arise where a defect or danger is revealed by user operation and brought to the attention of the manufacturer; the existence and scope of such a duty are generally fact-specific
 
 (see, Cover v Cohen,
 
 61 NY2d 261, 274-277 [technical service bulletin issued by manufacturer and sent to vendor 13 months after delivery relevant and admissible];
 
 see also, Kriz v Schum,
 
 75 NY2d 25,
 
 supra
 
 [upholding plaintiffs claim based on a post-sale failure to warn];
 
 Haran v Union Carbide Corp.,
 
 68 NY2d 710, 712 [no notice to manufacturer of a danger or defect in the product]).
 
 [3]
 

 The justification for the post-sale duty to warn arises from a manufacturer’s unique (and superior) position to follow the use and adaptation of its product by consumers
 
 (see, Cover v Cohen,
 
 61 NY2d 261,
 
 supra).
 
 Compared to purchasers and users of a product, a manufacturer is best placed to learn about post-sale defects or dangers discovered in use. A manufacturer’s
 
 *241
 
 superior position to garner information and its corresponding duty to warn is no less with respect to the ability to learn of modifications made to or misuse of a product. Indeed, as in this case, Hobart was the only party likely to learn about the removal of the safety guards and, as it ultimately did, pass along warnings to customers.
 

 This Court therefore concludes that manufacturer liability can exist under a failure-to-warn theory in cases in which the substantial modification defense as articulated in
 
 Robinson
 
 might otherwise preclude a design defect claim.
 

 We should emphasize, however, that a safety device built into the integrated final product is often the most effective way to communicate that operation of the product without the device is hazardous. Thus, where the injured party was fully aware of the hazard through general knowledge, observation or common sense, or participated in the removal of the safety device whose purpose is obvious, lack of a warning about that danger may well obviate the failure to warn as a legal cause of an injury resulting from that danger (see,
 
 e.g., Smith v Stark,
 
 67 NY2d 693, 694;
 
 Bigness v Powell Elecs.,
 
 209 AD2d 984, 985;
 
 Baptiste v Northfield Foundry & Mach. Co.,
 
 184 AD2d 841, 843;
 
 Lombard v Centrico, Inc.,
 
 161 AD2d 1071, 1073). Thus, in appropriate cases, courts could as a matter of law decide that a manufacturer’s warning would have been superfluous given an injured party’s actual knowledge of the specific hazard that caused the injury (see,
 
 e.g., Smith v Stark, supra; Baptiste v Northfield Foundry & Mach. Co., supra).
 
 Nevertheless, in cases where reasonable minds might disagree as
 
 to
 
 the extent of plaintiffs knowledge of the hazard, the question is one for the jury (see,
 
 e.g., Jiminez v Dreis & Krump Mfg. Co.,
 
 736 F2d 51, 55-56 [2d Cir 1984]).
 

 Similarly, a limited class of hazards need not be warned of as a matter of law because they are patently dangerous or pose open and obvious risks (see,
 
 Schiller v National Presto Indus., 225
 
 AD2d 1053;
 
 Bazerman v Gardall Safe Corp.,
 
 203 AD2d 56;
 
 cf., Amatulli v Delhi Constr. Corp.,
 
 77 NY2d 525, 532-533 [had aboveground pool not been installed two feet below ground level, “its depth would have been readily apparent and would itself have served as an evident warning against diving”]; see
 
 also,
 
 1 Weinberger,
 
 op. cit.,
 
 § 17:07, at 17-8 [no duty to warn where danger “can be patently recognized simply as a matter of common sense”]; Prosser and Keeton, Torts § 96, at 686-687 [5th ed] [courts treat obvious danger as “a condition that would ordinarily be seen and the danger of which would ordinarily be
 
 *242
 
 appreciated by those who would be expected to use the product”]). Where a danger is readily apparent as a matter of common sense, “there should be no liability for failing to warn someone of a risk or hazard which he [or she] appreciated to the same extent as a warning would have provided” (Prosser and Keeton,
 
 op. cit.,
 
 at 686). Put differently, when a warning would have added nothing to the user’s appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning. On the other hand, the open and obvious defense generally should not apply when there are aspects of the hazard which are concealed or not reasonably apparent to the user.
 

 This is particularly important because requiring a manufacturer to warn against obvious dangers could greatly increase the number of warnings accompanying certain products. If a manufacturer must warn against even obvious dangers, “[t]he list of foolish practices warned against would be so long, it would fill a volume”
 
 (Kerr v Koemm,
 
 557 F Supp 283, 288 [SDNY 1983]). Requiring too many warnings trivializes and undermines the entire purpose of the rule, drowning out cautions against latent dangers of which a user might not otherwise be aware. Such a requirement would neutralize the effectiveness of warnings as an inexpensive way to allow consumers to adjust their behavior based on knowledge of a product’s inherent dangers.
 

 While important to warning law, the open and obvious danger exception is difficult to administer
 
 (see, e.g.,
 
 Jacobs,
 
 Toward a Process-Based Approach to Failure-to-Warn Law,
 
 71 NC L Rev 121, 128-137 [1992]). The fact-specific nature of the inquiry into whether a particular risk is obvious renders bright-line pronouncements difficult, and in close cases it is easy to disagree about whether a particular risk is obvious. It is hard to set a standard for obviousness that is neither under- nor over-inclusive. Because of the factual nature of the inquiry, whether a danger is open and obvious is most often a jury question
 
 (see, e.g., Bolm v Triumph Corp.,
 
 33 NY2d 151, 159-160). Where only one conclusion can be drawn from the established facts, however, the issue of whether the risk was open and obvious may be decided by the court as a matter of law.
 

 m
 

 Having now answered the first part of the question certified to us by the Second Circuit — manufacturer liability
 
 can
 
 exist
 
 *243
 
 under a failure-to-warn theory in cases in which the substantial modification defense would preclude liability under a design defect theory — we turn to the second: “if so, is such manufacturer liability barred as a matter of law on the facts of this case, viewed in the light most favorable to the plaintiff?”
 

 Failure-to-warn liability is intensely fact-specific, including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances
 
 (see,
 
 n 3,
 
 supra)',
 
 obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause. The Second Circuit’s opinion does not indicate that there is an unsettled or open question of New York substantive law in any of these respects, and indeed explicitly reserves jurisdiction so that the Second Circuit itself can dispose of various additional questions that may remain on appeal. This Court therefore concludes that any remaining question posed is appropriately addressed by the Second Circuit in light of the substantive law question we have now resolved.
 

 Accordingly, the certified question should be answered as follows: manufacturer liability for failure to warn may exist in cases where the substantial modification defense would preclude liability on a design defect theory.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Wesley concur.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered as follows: Manufacturer liability may exist under a failure-to-warn theory in cases in which the substantial modification defense would preclude liability under a design defect theory.
 

 [1]
 

 . Although the plaintiff in
 
 Robinson
 
 also raised a claim for failure to warn
 
 (id.,
 
 at 481, 483-485 [Fuchsberg, J., dissenting]), the dismissal of plaintiff’s claim, not discussed in the majority opinion, was fact-specific. The manufacturer had even warned Robinson’s employer that the alteration compromised the safety features of the machine.
 

 [2]
 

 . True, issues of foreseeability, obviousness, proximate cause or the adequacy of warnings can be troublesome in failure-to-wam cases, as has been noted by various commentators (see,
 
 e.g.,
 
 Henderson & Twerski,
 
 Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn,
 
 65 NYU L Rev 265 [1990]; Jacobs,
 
 Towards a Process-Based Approach To Failure-To-Warn Law,
 
 71 NC L Rev 121 [1992]). Those difficulties do not, however, negate the duty to warn against foreseeable product misuse which is well established in this Court’s precedents as well as contemporary products liability jurisprudence.
 

 [3]
 

 . As we noted in
 
 Cover,
 
 the post-sale duty of a manufacturer to warn involves the weighing of a number of factors including the degree of danger the problem involves, the number of reported incidents, the burden of providing the warning, as well as the burden and/or ability to track a product post-sale
 
 (see, Cover v Cohen,
 
 61 NY2d, at 275-276,
 
 supra;
 
 Restatement [Third] of Torts — Products Liability § 10).