(July 10, 2012)

■ WILLIAM HARTNETT et al., Appellants, v CHANEL, INC., et al., Respondents. (And a Third-Party Action.) [948 NYS2d 282]—

On November 14, 2006, plaintiff, an electrician employed by third-party defendant Bloomingdale's, Inc. (Bloomingdale's), was injured in Bloomingdale's Manhattan department store while attempting to run electrical wires for a fire alarm system for Bloomingdale's into a eight feet three inch by four feet seven inch glass display box, manufactured by defendant Display Craft Manufacturing Company (Display Craft). The illuminated display box was mounted on a column in a boutique operated by defendant Chanel, Inc. (Chanel) inside the department store, and advertised the Chanel product line. In March 2007, plaintiff commenced the instant personal injury action against Chanel and Display Craft alleging negligence, products liability, and violations of Labor Law §§ 200, 240 (1) and 241 (6).

At deposition, plaintiff testified that he was trying to open the display box in order to determine whether it was possible to snake the fire alarm wire into it. First, he pressed on the sides of the display box to open it, as he had done with other smaller, hinged display boxes in the store. Although he did not see any hinges, he assumed that the display box had hinges. When it did not open, he then knelt down next to the box and attempted to open it by prying off the glass panel with a thin screwdriver along the bottom of the left edge. He testified that he believed this method would work because he had opened smaller, hinged boxes this way. As plaintiff was wedging the screwdriver under the panel, the 146-pound panel bowed, sprang loose from the box, and fell on his hand.

Display Craft's chief executive officer testified that the display box, rather than using a piano-hinge system where the glass panel opened as a door, had a "U-channel" system where the glass panel slid into grooves on three sides of the box and was secured by bullet catches. He explained that his design utilized a "U-channel," because a piano hinge system was not capable of supporting a glass panel of that weight (146 pounds) on a box that size.

In January 2010, Chanel moved for summary judgment dismissing the complaint, arguing, inter alia, that it did not manufacture the display box and that there was no evidence that it was negligent. Chanel's engineering expert stated in an affidavit that design of the display box, including the manner in which the glass frame was secured, was safe for its intended use, and had functioned as intended for the two years before plaintiff's attempt to pry it open. He further testified that the interior of the display box was designed to house only its own components.

In February 2010, Display Craft also moved for summary judgment dismissing the complaint. Display Craft argued, inter alia, that there was no evidence that the display box was defectively designed or manufactured and that it was plaintiff's attempt to open the box with a screwdriver that proximately caused his injury.

Plaintiff opposed the motions on the ground that the display box was defectively designed because there was no hinge and no indication of how the glass panel could be safely removed. Plaintiff argued that the design posed a latent hazard, and that Display Craft had a duty to warn against such a hazard, and Chanel had a duty to protect against known latent hazards on the premises it occupied. In support, plaintiff submitted the report of his expert industrial designer who opined that the design of the display box was negligent and that defendants failed to place any warnings on the display box, which constituted a departure from industrial design and constituted a design defect. The court granted defendants' motions,[1] finding that "it was . . . plaintiff's unilateral decision to open the box using an obviously unsafe method that was the sole proximate cause of the accident."

For the reasons set forth below, Chanel and Display Craft are entitled to summary judgment dismissing plaintiff's negligence and product liability claims. Plaintiff failed to raise a question of material fact as to whether the display box was defectively designed, or whether Display Craft had a duty to warn.

A manufacturer may be held liable for a defective product when it "contains a manufacturing flaw, is defectively designed or is not accompanied by adequate warnings for the use of the

---

1. In the same order, the court granted a motion by Bloomingdale's to dismiss a third-party action commenced against it by Chanel. Chanel has not cross-appealed from that dismissal. The motion court also found that plaintiff abandoned his Labor Law claims, which plaintiff does not contest on appeal. Thus, plaintiff's only remaining claims are for negligence and products liability asserted against Chanel and Display Craft.

product" (*Liriano v Hobart Corp.*, 92 NY2d 232, 237 [1998]). A defectively designed product is one that "is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983] [internal quotation marks omitted]). To recover for injuries caused by a defective product, the defect must have been a substantial factor in causing the injury, and "the product must have been used for the purpose and in the manner normally intended or in a manner reasonably foreseeable" (*Amatulli v Delhi Constr. Corp.*, 77 NY2d 525, 532 [1991]).

A manufacturer has a duty to warn foreseeable users of the product "against latent dangers resulting from foreseeable uses of its product of which it knew or should have known" (*Liriano*, 92 NY2d at 237). This duty also extends to dangers posed by reasonably foreseeable unintended uses of a product (*id.*).

In this case, the court properly determined that Chanel did not design the display case. The record reflects that Chanel provided conceptual drawings, but Display Craft designed and manufactured the box, including incorporation of the "U-channel" system.

Furthermore, defendants' evidence established that the display box was not defectively designed. It is undisputed that the box functioned effectively for two years until plaintiff attempted to pry off the glass panel. Chanel's expert engineer's unrebutted testimony established that the display box conformed with all applicable codes and regulations and that the use of a "U-channeled, bullet-catch design" was common in the industry.

In opposition, plaintiff failed to raise a triable issue of fact. His expert's opinion that the design was defective was purely speculative as he failed to cite to any regulations, facts or data in support of his conclusion, and as such was not sufficient to raise a triable issue of fact (*see e.g. Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]; *Delgado v County of Suffolk*, 40 AD3d 575, 576 [2007] [the plaintiff's expert's conclusions "were not supported by empirical data or any relevant construction practices or industry standards"]).

As to Display Craft's alleged duty to warn, the record reveals that Chanel was the foreseeable user and that Display Craft was aware of the difficulty of servicing the display. Display Craft's chief executive officer testified that Display Craft specifically advised Chanel to procure the services of an expert to maintain the display box. The reason for this is obvious from both the size and weight of the display itself as well as the

aesthetics of the display. The record reflects that Chanel hired an expert to perform all necessary maintenance and service work on the light box display unit.

Contrary to the dissent's view, the mere fact that plaintiff had changed light bulbs in smaller display boxes in the store does not make him a foreseeable user of this particular box. There is no evidence that Bloomingdale's personnel ever performed any service tasks on the display box, including changing the light bulbs, at any time during the two years between its installation and plaintiff's accident.

Nor was plaintiff's misuse of the display unit foreseeable. It is undisputed that the display unit was not designed to accommodate anything other than its own parts, and that neither defendant was advised that plaintiff planned to open the display box to see if he could run fire alarm wire into it. Just because the display box was located in an open area and designed so that the interior could be accessed does not mean that Display Craft should have anticipated that Bloomingdale's workers would attempt to access it for reasons having nothing to do with maintenance of the display.

Even were we to find, arguendo, that there is an issue of fact on this question, there is no duty to warn of a product's obvious danger, particularly where the injured party was fully aware of the hazard through general knowledge, observation, or common sense (*Liriano*, 92 NY2d at 242). Here, the sheer size of the glass panel, coupled with the lack of visible hinges and its failure to open as other smaller boxes did by pressing on the side, should have been warning enough to plaintiff not to attempt to pry it open from the bottom with a screwdriver (*see e.g. Bazerman v Gardall Safe Corp.*, 203 AD2d 56 [1994] [no duty to warn of the obvious risk and possibility of injury posed by moving and turning over a heavy safe which slipped and crushed the plaintiff's hand]).

Finally, Chanel is not liable to plaintiff for common-law negligence. It is undisputed that Chanel had no knowledge of the installation of the fire alarm system. Furthermore, as discussed above, it was plaintiff's method of opening the display box with a screwdriver that was the sole proximate cause of his injury. An owner may not be held liable when the accident arose out of the means and methods of a plaintiff's work, over which the owner had no authority (*see Lombardi v Stout*, 80 NY2d 290, 295 [1992]). Concur—Friedman, Catterson, Renwick and Freedman, JJ.

Mazzarelli, J.P., dissents in part in a memorandum as follows: Plaintiff William Hartnett worked for third-party defendant

Bloomingdale's, Inc. as an electrician at its store in Manhattan. Defendant Chanel, Inc. operates a boutique in Bloomingdale's. Located inside the boutique is a large glass display box, over eight feet tall and four feet wide. The sole purpose of the box is to illuminate a transparent poster which is attached to the front panel of the box. The box was manufactured by defendant Display Craft Manufacturing Company (Display Craft) and installed in 2004.

On November 14, 2006, plaintiff was working with his supervisor, Patrick O'Toole, and a coworker, on a store-wide project to move certain modules connected to the fire alarm system. The modules had been installed inside the ceiling but O'Toole wanted them moved much closer to the floor. The module that was located in the Chanel space was in the ceiling, above a structural building column. The display box was affixed to that column. O'Toole directed plaintiff and the coworker to accompany him to the Chanel boutique to investigate whether the wiring for the module could be run through the display box so the module could be attached to the lower portion of the column.

As they walked over to the display box, O'Toole stepped away to answer a telephone call. Before doing so, however, he asked plaintiff and his coworker to begin looking inside the display box to determine whether the plan to run wires through it was feasible. Although he had never before attempted to open up the large display box, plaintiff thought he knew how to because he had accessed other display boxes to change light bulbs. In his experience, the front panel of such a display box was a door that opened on a piano hinge. One would gently push on the side of the door opposite where the hinge was located, and it would open. Plaintiff first pressed the left side of the large panel door, and then the right side, but nothing happened. Not believing it was necessary to seek instructions on how to open the case, plaintiff got on his knees, positioned himself at the left side of the box and, using a small screwdriver, tried to pry the front panel frame from the box so that he could peer inside and determine if he could run wires through the box. Plaintiff had in the past used a screwdriver to facilitate the opening of such boxes. Because he was not able to see the entire inside of the box, plaintiff continued to pry the panel glass, with very little force, until, suddenly, it popped off the frame and struck his fingers, injuring them. As it turned out, the display box did not have a piano hinge but rather channel grooves in which the panel glass slid into place.

Plaintiff asserted in his complaint that Chanel and Display

Craft are liable for his injuries based on theories of negligence, products liability, and violations of Labor Law §§ 200, 240 (1) and 241 (6). In his supplemental verified bill of particulars, plaintiff alleged that the display box was defectively designed, constructed and maintained insofar as it lacked hinges to hold the front panel in place, especially because the front panels are "customarily" secured by hinges.

After discovery, Chanel and Display Craft both moved for summary judgment dismissing the entire complaint. Chanel argued that plaintiff was the sole proximate cause of the accident because, after the front panel did not pop out as he expected, he failed to investigate how the case could be safely opened, but rather forced the box open. Chanel further argued that the display box was not defective. In support of that position, it annexed the expert affidavit of George H. Pfreundschuh, P.E. Mr. Pfreundschuh stated that the manner in which the glass frame was secured was safe for its intended use. He opined that the box's channel-design at the bottom supported the glass panel's 146-pound weight, while spring-loaded pins at the top of the glass panel frame along with "bullet catches" in the "channel" kept the front glass panel from tipping out, or sliding out of the wall-mounted display box. Pfreundschuh stated that the display case, including its lack of warnings, did not violate any safety standards, codes or regulations, and that it was obvious from the large size of the display case, its lack of hinges, and considerable weight, that the glass could not be removed with a screwdriver.

Finally, Chanel argued that, even if the display case was defective, it was not liable because it did not design or manufacture the case. In this regard, Chanel relied on the deposition testimony of two of its employees, as well as a former employee who had been an in-house architect. These witnesses collectively testified that Chanel designed the concept and "look" of the display box, but had nothing to do with its mechanics. The mechanical workings of the display case, including how it opened and closed, they testified, was contracted out to Display Craft. However, one of the Chanel employees testified that Chanel understood that the design in question could not involve the inclusion of a piano hinge because the front panel was too heavy.

Display Craft also moved for summary judgment.[2] It too argued that plaintiff's attempt to pry the panel open with a screwdriver was the sole proximate cause of the accident. It fur-

___

2. Display Craft contends that it was improperly sued and that the proper defendant is Weitzman Industries, Inc.

ther stated that it manufactured the display box pursuant to Chanel's design intent, which called for a large case that could not possibly employ a piano hinge. Display Craft noted that, according to the testimony of Chanel's employees, there had never been an incident involving the display box in the two years between its installation and plaintiff's accident. It further pointed out that those employees testified that Chanel did not rely on Bloomingdale's employees to change the transparencies in the box but rather used a specialist named Charles Samples for such work. Display Craft also relied on the deposition testimony of its principal, Ronald Weitzman, who also stated that he understood that the transparencies in the display box would be changed by Charles Samples. He did not know, however, who was responsible for changing the light bulbs in the case.

In opposition to the motions, plaintiff argued that the sole proximate cause issue was a jury question. On the issue of whether the display case was defective, plaintiff submitted the expert affidavit of industrial designer Robert Anders. Anders opined that Chanel and Display Craft knew or should have known that Bloomingdale's employees might attempt to open the display box, as it encased a support column against which there was a "riser" that Bloomingdale's might need to access and because they might need to change the light bulbs in the box. He further faulted Chanel and Display Craft for failing to provide Bloomingdale's with a manual for servicing and maintaining the display box, which he stated constituted a departure from "Point of Purchase display design and industrial design standards," and for failing to place any warnings on the display box, which he stated constituted a departure from industrial design and "created a design defect in the product for all end users such as [plaintiff]." Anders further explained that the design for opening the display box was non-ergonomic, as it necessitated four men, using suction cups, to remove the glass panel and such design method/means for opening a display box was "inconsistent with acceptable display fixture design/ manufacturing standards." Anders opined that Display Craft and Chanel could have designed and engineered alternative means of creating a large glass display box. Specifically, Anders opined that the glass front panel should have been hinged, and a caster could have been affixed at the bottom of the door (opposite of the hinged side) so as to safely distribute the weight of the glass panel door. Anders reasoned that his proposed design could be opened by a single person if the need arose to change the display box's transparency image or lights.

The court granted the motions in their entirety. It found that

plaintiff abandoned his Labor Law claims against Chanel, since he failed to address those claims in his opposition papers. The court also dismissed plaintiff's products liability and negligence claims against Chanel, finding there to be no evidence that Chanel manufactured the display box, and no evidence that Chanel had any role in the installation of the wiring (for the fire alarm), or even knowledge that such work was taking place. The court further noted that plaintiff alone had decided to open the display box using a screwdriver, and that there was no evidence that Chanel contributed to plaintiff's misapprehension that the display box was hinged. The court concluded that there was no dangerous condition on the premises which contributed to the accident, and that plaintiff was injured solely as a consequence of his own decision to open the display box with a screwdriver. The court rejected Anders's expert affidavit as vague and speculative. The court also granted Display Craft's motion for summary judgment, "[s]ince there is no evidence that the display box was defective or dangerous and since the plaintiff's own actions were the sole proximate cause of his accident."

"A manufacturer who places a defective product on the market that causes injury may be liable for the ensuing injuries . . . . A product may be defective when it contains a manufacturing flaw, is defectively designed or is not accompanied by adequate warnings for the use of the product" (*Liriano v Hobart Corp.*, 92 NY2d 232, 237 [1998], citing *Codling v Paglia*, 32 NY2d 330, 342 [1973]). Plaintiff does not contend that the actual manufacture of the case was flawed. Rather, he contends that the design was defective, and that the case should have contained instructions on how to open it, as well as warnings that opening it in an inappropriate manner could lead to serious injury. Further, while Display Craft manufactured the display case at issue, plaintiff also seeks to have this Court hold Chanel liable as a manufacturer, based on the design input it gave Display Craft.

To establish a claim based on a design defect, a plaintiff must demonstrate that the product, though "meticulously made according to detailed plans and specifications," is "unreasonably dangerous for its intended use" (*Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 479 [1980]). The plaintiff must also show that "the product as designed was 'not reasonably safe'—that is, . . . a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108 [1983]).

Even where a product is otherwise safe, "[a] manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known. A manufacturer also has a duty to warn of the danger of unintended uses of a product provided these uses are reasonably foreseeable" (*Liriano*, 92 NY2d at 237 [citations omitted]). To be sure, where the hazard which caused the injury is open and obvious, no warning is necessary (*id.* at 241). Further, a defendant that fails to provide a warning that was otherwise required may be absolved of liability where the plaintiff should have known from common sense that his or her actions would lead to injury and can thus be considered the sole proximate cause of the accident (*see Howard v Poseidon Pools*, 72 NY2d 972, 974-975 [1988]).

The court properly determined that Chanel was not a "manufacturer" of the display case. Although it dictated the aesthetic design of the display box at issue, plaintiff has not cited to sufficient facts or authority establishing that Chanel could be considered a manufacturer for purposes of liability. Indeed, other than one of its employees' general awareness that the design could not support the use of piano hinges, there is no evidence that Chanel was involved in determining how the display case would open. Nor is Chanel liable to plaintiff for common-law negligence as a landowner. The accident arose out of the means and methods of plaintiff's work and Chanel had no authority over his activities (*see Lombardi v Stout*, 80 NY2d 290 [1992]).

The display case was not defectively designed. It is not disputed that in the two years between the installation of the display box and the accident, the box functioned exactly as it was designed to without incident. Accordingly, it cannot be said that it was "unreasonably dangerous for its intended use" (*Robinson*, 49 NY2d at 479).

However, this does not end the inquiry, because plaintiff claims that defendants should have warned against the dangers of *unintended* use of the case's front panel. In analyzing whether Display Craft should have provided a warning regarding the display box, it is important to remember that this case comes before this Court on a motion for summary judgment. Thus, we are bound by the usual admonition that summary judgment is a drastic remedy, to be granted only where the moving party has "tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]) and where the nonmoving party has failed "to establish the existence of material issues of fact which require a

trial of the action" (*id.*). This being a product liability case, we are further guided by the specific, and well-settled, principle that whether a particular misuse of a product was foreseeable, or so unreasonable as to preclude liability, is fact-intensive and is ordinarily a question for the jury (*see Liriano*, 92 NY2d at 241; *Magadan v Interlake Packaging Corp.*, 45 AD3d 650, 652 [2007]). Accordingly, to affirm the grant of summary judgment to defendants here we must conclude that, on this record, a reasonable juror could find only that plaintiff's actions were so unforeseeable as to displace defendants' liability, that a warning would have been futile, or that plaintiff was the sole proximate cause of the accident.

Display Craft does not, and cannot, argue that the display case was not meant to be opened. It is not disputed that the case was designed and built with a front panel that was intended to be removed so workers could access the inside of the box. The initial question then, with respect to foreseeability, is whether it could reasonably have been anticipated that workers such as plaintiff would attempt to open the case in the first place. Display Craft argues that it could not, for three reasons. First, it claims that the box only covered one side of the support column and could have been accessed from other points. Thus, it argues, it could not have anticipated that a person would opt to access the column through the case when he or she could just as easily have gone through the column. Display Craft next asserts that the box was not designed to have external wires run through it, and that it was never advised that Bloomingdale's might do so. Third, Display Craft maintains that only Charles Samples was authorized to access the case. Display Craft also argues that, even if it should have foreseen that someone would attempt to open the case, it could not have anticipated that such a person would have opened it in the manner plaintiff did. This, Display Craft claims, is because the danger involved in opening the case in such a manner was open and obvious.

None of these arguments leads me to conclude that there is no issue of material fact as to whether Display Craft should have foreseen plaintiff's actions. Display Craft's first argument that the light box covered only one side of the support column is irrelevant. Just because Bloomingdale's workers may not have needed to go through the display case to access the column does not conclusively establish that it would have been unreasonable for them to do so. Indeed, Display Craft fails to explain why the existence of other access points would necessarily foreclose the possibility that workers would attempt to go through the case. Similarly, that Display Craft was not specifically advised that

Bloomingdale's might try to run wires through the display is not determinative of whether a jury could find that, because the box was installed in an open area and was designed such that the inside could be accessed, Display Craft should have anticipated that different workers would attempt to open the case for a variety of reasons. Also irrelevant is the involvement of Charles Samples. The record indicates only that Samples was retained to change the transparencies in the display boxes. The various witnesses, including Weitzman, could not state whether it was also Samples's responsibility to change the bulbs inside the display case. Indeed, plaintiff himself testified that he had changed bulbs in similar-looking boxes. This suggests that Display Craft should have foreseen that Bloomingdale's workers would attempt to open the display case doors as they did with the myriad of other such cases throughout the store.

Also not dispositive is Display Craft's argument that plaintiff ignored an open and obvious hazard in attempting to open the case. The record is not clear that the danger should have been readily apparent. There is no evidence in the record that, despite the large size of the case, plaintiff should have anticipated, before he even attempted to open the box, that it did not contain a piano hinge. Similar, but smaller, cases did have such a hinge. Importantly, as Weitzman testified, some piano hinges are hidden inside the mechanism and are not externally apparent. Thus, the fact that no hinge was visible is not dispositive of whether the case had one. There is no reason to assume that common sense, or anything in plaintiff's training or experience, should have led him to believe that a piano hinge could not have supported the front panel. Further, plaintiff's deposition testimony does not show that, at the time the panel became dislodged, he had already realized that the door was not attached with a piano hinge but had a different opening mechanism altogether. Rather, plaintiff's testified that he was almost simultaneously in the process of prying the door open with the screwdriver and looking inside it when the panel fell off. Also, plaintiff testified that he had previously used a screwdriver to open up display cases which opened on a piano hinge. Thus, as far as plaintiff was concerned, there was no obvious danger when in attempting to do his job he applied a little bit of force to the panel.

The record is also inconclusive on the issue of whether a warning could have prevented the accident. It is true that plaintiff testified that, after he unsuccessfully attempted to open the display box by pushing on its face, he did not see the need to ask for instructions. However, the evidence is that he was not

aware that the display case did not open on a hinge, and would not open with the assistance of a screwdriver as others had in the past. Further, other than a conclusory statement from its expert, Display Craft offers nothing to show that it would have been impossible or even inconvenient to provide a warning about the proper way to open the case on the front panel itself, without interfering with the general aesthetic of the display.

On the record presented, Display Craft never made a showing sufficient to shift the burden to plaintiff on that issue (*see Johnson v Queens-Long Is. Med. Group, P.C.*, 23 AD3d 525, 527 [2005]). Even had the burden shifted, Display Craft's argument that plaintiff's expert failed to cite any code provision, standard, rule or regulation is unavailing. There is no authority which limits the need for safety warnings to situations where a legislative or industry body has expressly provided for the placement of such a warning.

Finally, plaintiff's testimony that he believed at all times that the front panel was supposed to open on a piano hinge, and that in the past he had nudged such doors open with a screwdriver, precludes a finding, at this stage, that he was the sole proximate cause of the accident. While Display Craft argues that plaintiff was aware of the use of suction cups at Bloomingdale's for removing heavy glass panels, his knowledge was limited to the use of such devices to remove panels attached to the sides of escalators. This does not mean that plaintiff therefore should have known that suction cups were needed to remove the front of the display box in question.

In cases like this, summary judgment is to be awarded only where no interpretation of the facts advanced by the plaintiff could lead a rational trier of fact to return a verdict in his favor. Here, the facts certainly could support a finding that Display Craft had a duty to warn plaintiff of the dangers attendant to the manner in which he attempted to open the display case. Accordingly, I dissent, because it was error on this record for the motion court to award Display Craft summary judgment.