11-754(L)
Saladino and Saladino v. American Airlines et al.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**AMENDED SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand thirteen.

PRESENT:

> JON O. NEWMAN,
> GERARD E. LYNCH,
> RAYMOND J. LOHIER, Jr.,
> > *Circuit Judges.*

_____

VITO SALADINO and ANNMARIE SALADINO,
> *Appellees-Cross-Appellants,*

v.                                                  Nos.   11-754(L),
                                                                 11-907(CON),
                                                                 11-1330(XAP)

AMERICAN AIRLINES, INC., et al.,
> *Appellants-Cross-Appellees.*

_____

FOR APPELLANTS:              TIMOTHY I. DUFFY (Michael J. Sullivan, Mark K. Silver, *on the brief*), Coughlin Duffy LLP, Morristown, New Jersey, *for* Stewart & Stevenson.

STEVEN J. AHMUTY, Jr. (Timothy R. Capowski, Juan C. Gonzalez, *on the brief*), Shaub, Ahmuty, Citrin & Spratt, LLP, New York, New York, *for* American Airlines.

FOR APPELLEES: ROBERT S. PECK (Jonathan I Edelstein, Kevin McAndrew, McAndrew, Conboy & Prisco, Melville, New York, *on the brief*), Center for Constitutional Litigation, P.C., Washington, D.C.

FOR AMICUS CURIAE: David B. Hamm (Michael Hoenig, Linda M. Brown, *on the brief*), Herzfeld & Rubin, P.C., New York, New York, Hugh F. Young, Jr., Esq., Product Liability Advisory Council Inc., Reston, VA, *for* amicus curiae Product Liability Advisory Council, Inc., *in support of appellants*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED**, **ADJUDGED**, **AND DECREED** that the judgment of the district court is **AFFIRMED**.

A jury in the United States District Court for the Eastern District of New York (Sandra L. Townes, *J.*) awarded substantial damages to plaintiffs Vito Saladino ("Saladino") and Annmarie Saladino based on serious injuries that Mr. Saladino sustained in 1999 while employed as a baggage handler at JFK Airport for third-party defendant American Airlines ("American"). While riding on a baggage tractor manufactured by Stewart & Stevenson Services, Inc. and/or its related companies Stewart & Stevenson Technical Services, Inc., and Stewart & Stevenson Tug, LLC (collectively, "S&S"), Saladino was struck in the head by the tractor's hood, rendering him quadriplegic.

2

Plaintiffs sued S&S in 2001 on various products liability theories; S&S impleaded American, seeking contribution and indemnification. In 2007, the district court granted summary judgment to S&S and American (collectively, "defendants") on all claims except plaintiffs' failure to warn theory and the derivative claim for loss of consortium, which proceeded to trial. In November 2008, a liability jury found for plaintiffs, apportioning the fault 30% to S&S and 70% to American. The court denied defendants' Rule 50 and 59 motions in March 2010, and the parties tried the issue of damages to a second jury, which awarded plaintiffs a pre-structuring judgment totaling $40,190,417.20. After denying defendants' motions for remittitur, the court entered a final structured judgment totaling $48,323,925.93.

Defendants now appeal both the findings of liability and the denial of remittitur on damages. Because we affirm the district court's judgment, we need not reach plaintiffs' conditional cross-appeal of the district court's dismissal of their design defect claim. We assume familiarity with the facts and lengthy history of the case, setting forth only the basic facts to provide context for our discussion of the legal issues.

Saladino was injured while riding as a passenger in a baggage tractor manufactured by S&S and driven by a coworker, Daniel Snow. The tractor rode behind a parked jet on the tarmac, and when this jet started its engines in a test, the backwash from the jet engines caused the hood of the tractor to rotate in a half circle, striking Saladino's head. The evidence permitted the jury to find that the tractor had once been equipped

with a cab that might have protected Saladino from the fly-away hood; that the tractor

was sold by S&S without the cab, which was offered by S&S as an option and ordered by

American separately and installed after the tractor's delivery; that the cab had been

removed by American after it was damaged in an unrelated accident; that the tractor's

hood was equipped with a hinge that – unlike conventional car hoods whose hinges limit

the extent to which the hood can open – permitted the hood to flip 180 degrees and enter

the passenger compartment; and that the rubber latches that secure the hood had

deteriorated over time or been removed, thus permitting the unsecured hood of this

particular vehicle to fly open in the jetwash.  Plaintiffs' theory at trial was that S&S was

liable for its failure to warn users that operating the vehicle without a cab and without

adequate latches could lead to injury due to the design of the hood.  Defendants argue that

this theory was defective, either on its face or as presented to the jury by plaintiffs'

evidence, for several reasons.

## 1.  Liability

First, S&S argues that plaintiffs failed to establish a prima facie case for liability

on a failure to warn theory because their evidence did not establish that it was foreseeable

to S&S that the tractor would be used in its "modified" state.  We reject this contention.

Under New York law, a "manufacturer [] has a duty to warn of the danger of unintended

uses of a product provided these uses are reasonably foreseeable." Liriano v. Hobart

Corp., 92 N.Y.2d 232, 237 (1998).  A jury could reasonably have found, based on the

4

evidence at trial, that it was foreseeable to S&S that the tractor would be used without a cab, given the evidence that the cab was only an option, that this particular tractor – like most tractors of that model sold by S&S – was initially ordered without a cab, and that the cab was designed and marketed for the operator's comfort rather than as a safety feature. Construing the evidence in the light most favorable to the verdict, see, e.g., Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 624 (2d Cir. 2001), it was hardly unforeseeable that such tractors might be operated without cabs. Because we are persuaded that this case falls comfortably under the general rule of Liriano and does not present a novel question of state law, we decline S&S's request that we certify to the New York Court of Appeals the question whether a manufacturer has a duty to warn of a product's operation in a "dismantled," as opposed to "substantially modified," state.

Second, American argues that plaintiffs' case was legally insufficient because, under the facts of this case, plaintiffs were required to present "expert proof regarding the feasibility, actual content, form and placement of a proposed warning." The argument is without merit. As American's counsel acknowledged at oral argument, New York does not have a categorical rule requiring expert proof in failure to warn actions. We are not persuaded that a jury would be so confused by lay testimony about the operation of the tractor's cab, hood hinge, or latches as to undermine the sufficiency of the evidence to support the verdict. That expert testimony – or an exemplar warning – may have assisted the jury, or advanced plaintiffs' case, does not mean that jurors could not understand,

without such evidence, the basic mechanisms at issue in this case, including a hinge that permitted the tractor's inadequately secured hood to open 180 degrees when struck by strong winds near a running jet engine, or the parties' contentions about the nature and potential efficacy of the warning that plaintiffs contended should have been provided.

Third, S&S argues that any failure to warn did not proximately cause Saladino's injuries because, as a matter of law, the product's danger was open and obvious, rendering a warning superfluous. The trial record, however, contains evidence from which the jury reasonably could have found that the hinge's ability to open in a half circle, and the resulting possibility that the tractor's hood could rotate into the tractor's passenger compartment, was not obvious to any reasonably prudent person, since the mechanism was not reasonably apparent. See Liriano, 92 N.Y.2d at 242 ("[T]he open and obvious defense generally should not apply when there are aspects of the hazard which are concealed or not reasonably apparent to the user.").

Fourth, and relatedly, S&S and American both argue that the evidence at trial required the jury to find that Saladino was a "knowledgeable user" of the tractor because he knew or reasonably should have known of the specific danger based on his training and experience operating tractors for many years. It is true that "where the injured party was fully aware of the hazard through general knowledge, observation or common sense, or participated in the removal of the safety device whose purpose is obvious, lack of a warning about that danger may well obviate the failure to warn as a legal cause of an

6

injury resulting from that danger." Id. at 241. But in this case, the jury could reasonably have found, based on the trial evidence, that Saladino was not aware of the danger that the hood could open into the passenger compartment, or that the hood presented a danger when the tractor was operated away from full-power runway jet engines. For example, most of American's tractors, made by different companies, had hoods that would not flip completely over, and Saladino testified that he believed the hood on this tractor, if unsecured and subject to sufficiently high winds created by an engine, would open partway and then stop, as he had witnessed on other tractors. Saladino also testified repeatedly that he believed, based on his training, that though the wind created by a full-throttle jet engine on a runway could tear the hood totally off a tractor, the lower-speed winds created by engine tests would at most cause the hood to open, obscuring his vision. The jury thus could reasonably have found that, although Saladino had been trained and was aware that operating a tractor in the high-speed winds present on a runway was acutely dangerous, in part because of the risk that the hood might open, Saladino was unaware of the danger that in fact materialized in this case.

Fifth, defendants both argue for a new trial based on an allegedly irrational jury verdict. The jury found that Saladino was negligent, but found that his negligence did not proximately cause his injury, and thus did not accord him any fault in the calculation of liability. We are mindful that under New York law, a court may order a new trial only if "the issues of negligence and proximate cause were so inextricably interwoven as to make

7

it *logically impossible* to find negligence without also finding proximate cause." Rubin v. Pecoraro, 141 A.D.2d 525, 527, 529 N.Y.S.2d 142 (2d Dep't 1988) (emphasis added). Where, as here, there was no special interrogatory, we must uphold the verdict if any rational theory of the case is consistent with the jury's determinations of cause. See Waild v. Boulos, 2 A.D.3d 1284, 1286, 770 N.Y.S.2d 253 (4th Dep't 2003). Here, the jury may have found that, for example, Saladino and the tractor's driver were negligent in failing to inspect the vehicle before getting in, but that their failure to do so was not a substantial factor in causing the injury. We therefore reject this argument.

## 2. Damages

Finally, defendants argue that if we affirm the jury's verdict on liability, we should order a new trial on damages unless Saladino agrees to a substantial reduction of his damages award for past and future pain and suffering. The damages jury awarded Saladino $5 million for his past pain and suffering and $10 million for future pain and suffering. At oral argument before this Court, S&S's counsel suggested that a figure of $1 million for past pain and suffering and $3.5 million for future pain and suffering would be a fair figure. Because we identify no error in the district court's careful decision denying remittitur and cannot say that its decision to uphold the jury's verdict was beyond its discretion, we reject this argument.

Under New York Civil Practice Law and Rules § 5501(c), the Appellate Division is charged with ensuring the uniformity of monetary judgments awarded in the state courts:

8

> In reviewing a money judgment . . . in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.

N.Y. C.P.L.R. § 5501(c). In <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 428, 437-38 (1996), the United States Supreme Court held that, in order to prevent forum shopping, federal courts should also apply the state scheme. In the federal system, however, the district court that tries the case performs the initial review of the award, taking the place of the Appellate Division, and our Court reviews that decision only for abuse of discretion. <u>Patterson v. Balsamico</u>, 440 F.3d 104, 119-20 (2d Cir. 2006), citing <u>Gasperini</u>, 518 U.S. at 437-38. Thus, we will reverse the district court's decision only if it was tainted by legal error or clear factual error, or otherwise fell outside the range of permissible decisions. <u>See</u>, <u>e.g.</u>, <u>Ericksson v. Comm'r of Soc. Sec.</u>, 557 F.3d 79, 82 (2d Cir. 2009).

Initially, defendants argue that the district court was legally required to examine only cases arising in the Second Department. But they have failed to point us to any binding authority for this proposition. Given the paucity of cases factually similar to Saladino's, and in the absence of any evidence that community standards differ between, for example, Manhattan and Queens, we believe it would be odd for a federal court to disregard potentially informative cases arising in other parts of the state. Similarly,

9

although it is true that awards affirmed by the Appellate Division are the most important to a federal court's § 5501(c) analysis, that does not mean that unappealed state trial court verdicts or federal court verdicts are irrelevant. Thus, the district court did not err by examining federal cases, state appellate cases from outside the Second Department, or a state trial court decision.

Furthermore, although defendants compare this case to others largely on the basis of physical pain, it is also clear that New York law permits monetary awards for both the physical pain resulting from an injury and the emotional suffering and loss of enjoyment of life that also results proximately from that injury. See, e.g., 36 N.Y. Jur. 2d Damages § 97; Ditingo v. Dreyfuss, 27 A.D.3d 1024, 1026, 812 N.Y.S.2d 165, 168 (3d Dep't 2006); Tenuto v. Lederle Laboratories, 26 Misc. 3d 1225(A), 907 N.Y.S.2d 441 (Sup. Ct. 2010). The district court instructed the jury that it could consider the effect Saladino's injuries had on his ability to enjoy life, and defendants do not challenge those instructions or the verdict form. Thus, we assume that the jury permissibly awarded compensation for both physical and mental suffering.

After noting the $17.5 million trial award for pain and suffering in Tenuto, the district court examined verdicts affirmed by various departments of the Appellate Division in cases involving paralysis. See Saladino v. Stewart & Stevenson Servs., Inc., 01-CV-7644 SLT JMA, 2011 WL 284476, at *6-7 (E.D.N.Y. Jan. 26, 2011). The district court noted that in Miraglia v. H & L Holding Corp., 36 A.D.3d 456, 828 N.Y.S.2d 329 (1st Dep't 2007), the Appellate Division approved the trial court's award of $5 million for

10

past pain and suffering, but reduced the $10 million future pain and suffering award to $5 million. The district court then noted that in several other cases, the Appellate Division has approved aggregate past and future awards of $10 million. See Bissell v. Town of Amherst, 56 A.D.3d 1144, 867 N.Y.S.2d 582 (4th Dep't 2008); Ruby v. Budget Rent A Car Corp., 23 A.D.3d 257, 806 N.Y.S.2d 12 (1st Dep't 2005). The district court reasoned, however, that the victims in all of those previous cases suffered from lesser paralysis than Saladino does. In light of relevant case law, the court found the jury's award permissible under § 5501(c).

We cannot deem that conclusion an abuse of discretion. The district court's decision does not rest on a factual or legal error. Furthermore, in exercising its discretion to make a reasoned judgment to determine whether the award "deviate[d] materially from what would be reasonable compensation," N.Y. C.P.L.R. § 5501(c), the court reasonably relied on the fact that Saladino's physical injuries were more extensive than in any of the analogous cases. Defendants argue that Saladino's nervous system is so damaged that, unlike some of the plaintiffs in comparator cases, he does not suffer physical pain. Perhaps a court could conclude that the pain suffered by plaintiffs in other cases merited greater compensation than Saladino's paralysis and other loss of function, such as his inability to regulate his body temperature. But we do not deem the district court's contrary conclusion to be outside the range of permissible decisions.

11

## 3. Conclusion

We have considered all of appellants' arguments and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

12